STATE OF HAWAII, Plaintiff-Appellee, *v.* GABRIEL LUKA KEALOHA, Defendant-Appellant

NO. 7357

STATE OF HAWAII, Plaintiff-Appellee, *v.* JONEY PUA, Defendant-Appellant

NO. 7395

JUNE 23, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

These consolidated interlocutory appeals from orders of the Circuit Court of the Third Circuit denying, in part, defendants-appellants' motions to suppress evidence raise novel questions related to a constitutional mandate that search warrants particularly describe "things to be seized."

Defendant-appellant Joney Pua (hereafter "Pua") was indicted for promoting a detrimental drug in the first degree, in violation of HRS § 712-1247. Defendant-appellant Gabriel Luka Kealoha (hereafter "Kealoha") was also indicted for promoting a detrimental drug in the first degree; he was indicted on another count charging ownership or possession of firearms by a person convicted of certain crimes, in violation of HRS § 134-7. The indictments followed their simultaneous arrests on September 14, 1978, resulting from an aerial reconnaissance by the police of the Kalapana area on the island of Hawaii.

Kealoha thereafter filed motions to suppress evidence and to dismiss the indictment. That portion of Kealoha's motion where he sought to suppress statements obtained in disregard of his *Miranda*[1] rights was granted; his attempts to suppress evidence seized under an allegedly overbroad warrant and to have the indictment dismissed[2] were overruled. Pua likewise

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] The denial of the motion to dismiss the indictment was not raised in Kealoha's appeal.

filed a motion to suppress evidence seized pursuant to the same warrant. The circuit court ordered the suppression of only "a roll of undeveloped Kodacolor film" but denied her motion in all other respects. Defendants-appellants appeal from the foregoing denials of the motions to suppress evidence.

I.

On September 16, 1978, two days after the arrests of Pua and Kealoha, Officer Yamabe of the Hawaii County Police Department submitted an affidavit to a district judge of the Third Circuit, stating in the detailed document that there was probable cause to believe instrumentalities of crime and other incriminatory material were to be found in and around a certain blue tent then being occupied by defendants-appellants. The district judge issued a search warrant on this basis,[3] authorizing a seizure of the following: "1. Marihuana and marihuana paraphernalia; 2. Articles of personal property tending to establish the identification of persons in control of the tent and premises; 3. .223 caliber cartridges.", purportedly located in the tent. Officer Yamabe, in executing the warrant, seized numerous items of personal property.[4]

---

[3] Rule 41, Hawaii Rules of Penal Procedure, setting forth the authority of a district court to issue a search warrant, states in relevant part, "[a] warrant shall issue only on an affidavit or affidavits sworn to before the judge and establishing the grounds for issuing the warrant. If the judge is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. . . ."

[4] The inventory attached to the officer's return read as follows:
1. One white envelope with Jr. and Joney written on it.
2. Three .22 cal. rounds.
3. One Lancer matchbox with marijuana seeds.
4. One macadamia nut can with two cannisters, one yellow, and one black with marijuana seeds.
5. One Kodacolor 2, twenty exposures in Kodak wrapper.
6. One Kodacolor 2, in Kodak box.
7. One white dish with cured marijuana.
8. One red plastic ammunition holder with ten .223 cal. rds. Remington

Two narrow questions are presented for determination here: 1. Is the language of a warrant authorizing a search for "articles of personal property tending to establish the identification of persons in control of the tent and premises" so broad that a seizure of evidence or evidentiary material pursuant thereto contravenes the particularity requirements in the state and federal constitutions?[5] 2. If the language is impermissibly broad, may it be severed from the rest of the warrant that particularly describes other articles subject to seizure so the articles particularly described can be used as evidence? We answer both questions in the affirmative.

## II.

This court has had no occasion to pass on the requirement in the state constitution that search warrants particularly describe "things to be seized."[6] But as Fourth Amendment protections against unreasonable searches and seizures and

---

9. One red plastic ammunition holder with [sic] two .223 rds., Remington.
10. One black .223 ammunition clip with nineteen .223 rounds
11. One Kodacolor film.
12. Cosmetic items, one pair gold earrings, one key, one printed dress and one black panty.

[5] Article I, Section 5 of the Constitution of the State of Hawaii which was in effect at the time of the search and seizure herein provided in relevant part:

[N]o warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. . . .

As a result of the 1978 Hawaii Constitutional Convention and subsequent ratification procedure, this provision was renumbered as Article I, Section 7.

The Fourth Amendment to the United States Constitution provides in relevant part:

[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[6] In Hang Lung Kee & Co. v. Bickerton, 4 Haw. 584 (1883) (overruled on other grounds, State v. Taylor, 49 Haw. 624, 631, 425 P.2d 1014 (1967)), the Supreme Court of the Kingdom of Hawaii discussed the requirement of Article 12 of the Constitution of the Kingdom of Hawaii that the *place* to be searched pursuant to a warrant be particularly described. *See also* See Hop v. Chillingworth, 5 Haw. 537 (1886).

the right to have unlawfully seized evidence excluded from trial have been incorporated into the applicable section of our constitution, we are guided here by relevant decisions of the Supreme Court of the United States. *State v. Abordo*, 61 Haw. 118, 121, 596 P.2d 773, 775 (1979); *State v. Pokini*, 45 Haw. 295, 308, 367 P.2d 499, 506 (1961). *See also Mapp v. Ohio*, 367 U.S. 643 (1961); *Berger v. New York*, 388 U.S. 41 (1967).

In *Marron v. United States*, 275 U.S. 192 (1927), the Supreme Court said:

> The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

275 U.S. at 196. In discussing the historical background of the Fourth Amendment's adoption by the fledgling United States, quoting *Boyd v. United States*, 116 U.S. 616, 624 (1886), the Court further stated:

> "In order to ascertain the nature of the proceedings intended by the Fourth Amendment to the Constitution under the terms 'unreasonable searches and seizures,' it is only necessary to recall the contemporary or then recent history of the controversies on the subject, both in this country and in England. The practice had obtained in the colonies of issuing writs of assistance to the revenue officers, empowering them, in their discretion, to search suspected places for smuggled goods, which James Otis pronounced 'the worst instrument of arbitrary power, the most destructive of English liberty, and the fundamental principles of law, that ever was found in an English law book;' since they placed 'the liberty of every man in the hands of every petty officer.' "

275 U.S. at 195. (*See Stanford v. Texas*, 379 U.S. 476, 481-85 (1965), *reh. denied*, 380 U.S. 926 (1965), for a more detailed review of the Amendment's genesis).

Determinations on specificity requirements, as in all search and seizure situations, must be on a case-by-case basis, taking into account all of the surrounding facts and

circumstances.[7] And in deciding the validity of the language of a warrant that directed police to search for and seize "articles of personal property tending to establish . . . identification . . .", we believe three factors merit paramount consideration: (1) the breadth of the warrant's apparent scope, (2) whether its execution would impinge upon vital rights and interests such as the right to privacy, and (3) whether the complexity and magnitude of the criminal activity being investigated would render a more particularized description of seizable articles difficult.

1. *The Language Of The Warrant.*

The cornerstone of a decision on particularity is, of course, the language of the warrant itself and *Stanford v. Texas, supra,* furnishes us guidance here. The Supreme Court in *Stanford* invalidated a warrant authorizing a search for and seizure of "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party in Texas, and the operations of the Communist Party in Texas." *Id.* at 478-79. In concluding the warrant belonged to a prohibited genre the Court said, "[W]e think it is clear that this warrant was of a kind which it was the purpose of the Fourth Amendment to forbid — a general warrant." *Id.* at 480.

A significant case of recent vintage is *Aday v. Superior Court of Alameda County,* 55 Cal. 2d 789, 13 Cal. Rptr. 415, 362 P.2d 47 (1961), where a search warrant setting forth numerous articles[8] to be seized was deemed invalid because

---

[7] Mascolo, *Specificity Requirements for Warrants Under the Fourth Amendment: Defining the Zone of Privacy,* 73 Dick. L. Rev. 1, 3 (1968) [hereinafter cited as *Specificity Requirements*]; *cf.* State v. Daniels, 46 N.J. 428, 436, 217 A.2d 610, 614 (1966) (case-by-case analysis for determining reasonableness of searches and seizures).

[8] The warrant had set forth, *inter alia,* the following articles to be seized in connection with a prosecution for conspiracy to publish, print and sell obscene and indecent writings: checks, check stubs, cancelled checks, check books, and bank statements; sales records and purchase records; customers' correspondence and customers' orders; invoices; bills; vouchers; statements; general ledgers, cash

its sweeping language caused it to closely resemble the condemned "general warrant". The California Supreme Court held that except for a set of tax returns (which was suppressed on other grounds) and two named books, the warrant "did not constitute legal authorization to search for or seize the articles." *Id.* at 796, 13 Cal. Rptr. at 419, 362 P.2d at 51. Thus, an all-embracing characterization of evidence sought may well vitiate an authorization.

Courts have also found the following authorizations in search warrants to be constitutionally deficient: to seize "certain property designed for use in the unlawful manufacture of intoxicating liquor";[9] "paraphernalia which could be used to violate [certain Connecticut laws]";[10] "$150,000 in merchandise";[11] "furniture and household goods";[12] "[e]vidences of indebtedness", "[t]elephone bills showing calls between . . . [defendant] and other persons" and "[a]ny papers showing names and addresses of associates of . . . [defendant]";[13] and "stolen property received and concealed upon [certain] premises in violation of [a statute]".[14]

In *United States v. Feldman*, 366 F. Supp. 356 (D. Haw. 1973), the United States District Court for the District of Hawaii passed on the breadth of search warrant language. A

---

receivable ledgers, cash disbursement ledgers, subsidiary accounts receivable ledgers, and subsidiary accounts payable ledgers; "[d]uplicate copies of federal and state income tax returns . . . for the year 1959"; corporate records, papers, correspondence, sales receipts, and bills of lading; "[b]ooks and magazines, including 'Sex Life of a Cop' also known as '10:04 Sgt. Thorne', and 'Joy Killer', but not limited thereto"; and "[a]ny and all other records and paraphernalia connected with [certain business]".

[9] United States v. Quantity of Extracts, Bottles, etc., 54 F.2d 643 (S.D. Fla. 1931).

[10] State v. Johnson, 160 Conn. 28, 273 A.2d 702 (1970); State v. Taylor, 28 Conn. Supp. 19, 246 A.2d 898 (1968).

[11] Lockridge v. Superior Court, 275 Cal. App. 2d 612, 80 Cal. Rptr. 223 (1969).

[12] People v. Coletti, 39 Misc. 2d 580, 241 N.Y.S.2d 454 (1963).

[13] Griffin v. Superior Court, 26 Cal. App. 3d 672, 103 Cal. Rptr. 379 (1972).

[14] Bloom v. State, 283 So. 2d 134 (Fla. App. 1973).

warrant authorizing a search for and the seizure of "mari-huana in hashish form and documents and instrumentalities relating to the shipment and ownership of marihuana" had been issued. In its execution, police uncovered hashish, tele-gram receipts, a passport and a yellow bag. The court con-cluded the evidence other than the hashish had been improp-erly seized because the term "documents and instrumen-talities relating to the shipment and ownership of marihuana" did not meet applicable standards of specificity.

The State cites several cases where search warrant lan-guage describing the scope of the search in broad general terms has been held sufficient to pass constitutional muster. The pertinent language in *United States v. Honore*, 450 F.2d 31 (9th Cir. 1971), *cert. denied*, 404 U.S. 1048 (1972), closely paralleled that of the warrant in the instant situation, but with a notable difference discussed below. The Court of Appeals for the Ninth Circuit in *Honore* upheld a warrant authorizing seizure of various specifically named items and "articles [of] personal property tending to establish the identify [sic] of the persons in control of the premises . . . including but not limited to utility company receipts, rent receipts, cancelled mail envelopes, and keys."[15]

More recently, in *Andresen v. Maryland*, 427 U.S. 463 (1976), the Supreme Court upheld the validity of a search warrant where the crucial phrase was: "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." There, the Court expressly found the scope of this language had been narrowed by limiting words im-mediately preceding it[16] and concluded, "[t]he warrants, ac-

---

[15] Also similar is the language of the warrant in State v. Wiley, 295 Minn. 411, 205 N.W.2d 667 (1973), a case holding that a warrant to search for and seize "items of identification to show constructive possession of . . . contraband such as rent receipts, utility bills, personal letters and other personal ID", complied with the particularity requirement. *See also People v. Schmidt*, 172 Colo. 285, 473 P.2d 698 (1970).

[16] The Andresen warrant commanded search for and seizure of:

[T]he following items pertaining to sale, purchase, settlement and conveyance of lot 13, block T, Potomac Woods subdivision, Montgomery County, Maryland: "title notes, title abstracts, title rundowns; contracts of sale and/or assignments

174

cordingly, did not authorize the executing officers to conduct a search for evidence of other crimes but only to search for and seize evidence relevant to the crime of false pretenses and Lot 13T." *Id.* at 481-82.

A review of the foregoing cases and the relevant facts in the instant case convinces us that the portion of the pertinent warrant authorizing a search for and seizure of "articles of personal property tending to establish . . . identification . . ." is defective. We find the description of the articles to be seized pursuant to its authority even less particularized than the offensive wording in *Stanford, Aday, and Feldman*.

There are critical differences between language commanding search for and seizure of "articles of personal property tending to establish . . . identification . . ." and the wording of the *Honore, Wiley,* and *Andresen* warrants. In *Honore* and *Wiley* broad general descriptions of the articles were particularized by specific examples of what was sought. Although the warrants were not models of specificity, the examples served to guide the executing officer and reviewing court in determining what items were or were not to be the objects of search and seizure. Absent such signposts, officers may "[seize] . . . one thing under a warrant describing another." *Marron, supra,* at 196. *Andresen* may be distinguished because broad language was substantially narrowed by reading the phrase "together with other fruits, instrumentalities and evidence of crime . . ." in conjunction with language focusing the permitted search on documents related to a particular parcel of land.

from Raffaele Antonelli and Rocco Caniglia to Mount Vernon Development Corporation and/or others; lien payoff correspondence and lien payoff memoranda to and from lienholders and noteholders; correspondence and memoranda to and from trustees of deeds of trust; lenders instructions for a construction loan or construction and permanent loan; disbursement sheets and disbursement memoranda; . . . books, records, documents, papers, memoranda and correspondence, showing or tending to show a fraudulent intent, and/or knowledge as elements of the crime of false pretenses, in violation of Article 27, Section 140, of the Annotated Code of Maryland. 1957 Edition, as amended and revised, together with other fruits, instrumentalities and evidence of crime at this [time] unknown."
427 U.S. at 480-81, n.10.

No examples or other limiting language that could have effectively circumscribed the search and seizure of the executing officer were extant in this case. The breadth of the search the officer assumed was sanctioned is underscored by the wide variety of personal property listed in the police inventory, items that may or may not be useful in establishing identity, e.g., an envelope, film, cosmetic items, gold earrings, a key, a printed dress, and a black panty. The language in question too closely resembles the wording of a forbidden "general warrant" for us to ratify a seizure effected thereunder.

## 2. *The Nature Of The Evidence Sought.*

While the language of the warrant itself would justify the reproof of a portion of the warrant, we also find support for this conclusion from an examination of the second factor, i.e., whether and to what extent the execution of the warrant could have impinged upon vital individual rights.

The warrant did not serve to deter the police from rummaging through all of the personal effects, private papers, and photographs, in or about the tent occupied by defendants-appellants as there was no direction to either seize or not to seize any, some, or all of these articles. Where a search and seizure may touch upon areas protected by the First Amendment or the right to privacy, we believe courts should be vigilant with respect to the sufficiency of the description of seizable items.[17] *United States v. Torch,* 609 F.2d 1088 (1979), *cert. denied* May 19, 1980, _____ U.S. _____, 48 U.S.L.W. 3745; *People v. Raicevich,* 61 Ill. App. 3d 143, 146, 377 N.E.2d 1266, 1269 (1978), *cert. denied,* 441 U.S. 963

---

[17] Some cases have recognized different particularity standards in those warrants for "mere evidence" on one hand and contraband and fruits and instrumentalities of crime on the other. People v. Mangialino, 75 Misc. 2d 698, 348 N.Y.S.2d 327 (1973); People v. Schmidt, 172 Colo. 285, 473 P.2d 698 (1970). Recognition of the privacy interests the Fourth Amendment was intended to protect and rejection of the use of antiquated property concepts in search and seizure law lead us to an analysis based upon a consideration of such privacy interests. Katz v. United States, 389 U.S. 347, 353 (1967); Warden v. Hayden, 387 U.S. 294, 305-6, 310 (1967).

(1979); *United States v. Scharfman*, 448 F.2d 1352, 1354 (2d Cir. 1971); *see Berger v. New York*, *supra*, at 56 (1967); *Stanford v. Texas*, *supra*, at 486 (1964); McKenna, *The Constitutional Protection Of Private Papers: The Role Of A Hierarchical Fourth Amendment*, 53 Ind. L.J. 55, 67-72, 76-80 (1977-78) [hereinafter cited as *Private Papers*]; cf. Stanley v. Georgia, 394 U.S. 557 (1969).

The intrusion here was especially egregious because the articles sought were those things in which an individual has strong privacy interests — those related to identification, which sets him apart from others. *See Private Papers*, *supra*, at 68-69; *cf. Kelley v. Johnson*, 425 U.S. 238, 253 (1976) (Marshall, J., dissenting); *Doe v. Bolton*, 410 U.S. 179, 211 (1973) (Douglas, J., concurring); *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 511-12 (1969); *Kent v. Dulles*, 357 U.S. 116, 126 (1958); *Jech v. Burch*, 466 F. Supp. 714, 719 (D. Haw. 1979).

3. *The Complexity Of The Crime Being Investigated.*

Finally, we consider the matter of whether the complexity and magnitude of the crime being investigated might have made it difficult to particularly describe "the things to be seized". We find it did not.

This case bears no similarity to *Andresen*, for example, where a complicated land fraud scheme was the subject of investigation. The broad language in the *Andresen* warrant was undoubtedly influenced by the intricacy of the illicit scheme involved. The facts and crimes here were relatively uncomplicated and a dilution of the express mandate for particularity is not in order.

As noted earlier, the bare language of a warrant directing seizure of "articles of personal property tending to establish . . . identification . . ." may support a conclusion that a portion of the warrant was bereft of a constitutionally demanded description. That the authorized search was especially intrusive into areas entitled to special protection and

that the relatively uncomplicated nature of the offenses under investigation could not mitigate a deviation from a strict adherence to the wording of the Fourth Amendment and Article I, Section 7 of the Hawaii constitution have also been shown. Consequently, the language of the search warrant directing search for and seizure of "articles of personal property tending to establish . . . identification . . ." clearly violated the requirement that a search warrant "particularly describe things to be seized."

We are cognizant of the difficulty of *a priori* decisions on what is likely to be found at private premises and what may serve to link suspected criminals with the fruits, instrumentalities, and other evidence of crime. However, a constitutionally imposed necessity for specificity precludes a ratification of warrant provisions ostensibly permitting the seizure of practically every article of personal property at a given location. Following the Supreme Court, "[i]n any event we cannot forgive the requirements of the Fourth Amendment in the name of law enforcement." *Berger v. New York, supra,* at 62.

### III.

Having decided the language of a portion of the search warrant to be impermissibly vague and general, we now consider whether the offending portion may be separated from the non-offending remainder so the seizure effected pursuant to the latter may stand. We find a severance proper under the circumstances involved.

In *Aday v. Superior Court of Alameda County, supra,* the Supreme Court of California in upholding the partial validity of a warrant said:

Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to

the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. Cf. United States v. Nine 200-Barrel Tanks of Beer, D.C., 6 F.2d 401, 402; United States v. Bell, D.C., 48 F.Supp. 986, 997.

*Id.* at 797, 13 Cal. Rptr. at 420, 362 P.2d at 52. *See also United States v. Ketterman,* 276 A.2d 243 (D.C. 1971); *People v. Mangialino, supra* note 17; *State v. Sagner,* 12 Or. App. 459, 506 P.2d 510 (1973).

Here, severability would be a more salutary ruling than the exclusion of everything seized.[18] The drastic alternative of suppressing all of the evidence obtained through the search would serve no purpose in a situation where the warrant was premised on a detailed affidavit reciting defendants-appellants' involvement in criminal activity that provided an adequate basis for the seizure of particularly described items, including contraband. The exclusion of such evidence from trial would only hamper law enforcement without reason.

The legitimate and substantial public interest in law enforcement may prevail over an individual's interest in privacy in given situations. Where his probable involvement in crime and a likelihood that incriminating evidence may be concealed in a particular place have been demonstrated to a judicial officer, a temporary and limited incursion into his privacy is sanctioned by the Fourth Amendment and Article I, Section 7 of the Hawaii constitution. A concern for the observance of constitutional limitations on such invasions has led us to disapprove an authorization for the seizure of undesignated personal articles. However, we find it unnecessary and unwise to suppress the contraband and other objects specifically designated for search and seizure. The invalid portion of the authorization, in our opinion, has not contaminated the remainder of the warrant issued by a detached tribunal.

---

[18] The courts in United States v. Burch, 432 F. Supp. 961 (D. Del. 1977), *aff'd,* 577 F.2d 729 (3d Cir. 1978), and People v. Bradford, 81 Misc. 2d 320, 365 N.Y.S.2d 940 (1975), for example, did not sever broadly worded provisions and suppressed all evidence obtained.

. We do not intend to foster an impression that warrants are to be treated as severable under all circumstances. Like the California Supreme Court in *Aday v. Superior Court of Alameda County, supra,* at 797, 13 Cal. Rptr. at 420, 362 P.2d at 52:

> We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

But as each search and seizure case turns on its own facts, abuses of the warrant procedure may be curbed whenever the facts justify a restraint. Where a warrant is in essence a "general warrant", it would still be subject to total invalidation.

Having concluded that evidence other than the particularly described items and the contraband should have been suppressed, we reverse in part and affirm in part the circuit court's order denying defendants-appellants' motions to suppress evidence. The cases are remanded for further proceedings consistent with this opinion.

*Steven K. Christensen* for Defendants-Appellants.

*Stanford H. Masui (Gary M. Pakele* on the briefs), Deputy Prosecuting Attorneys, for State of Hawaii.