120 P.3d 260

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Richard IWATATE, Defendant–Appellant**

**State of Hawai'i, Plaintiff–Appellee,**

v.

**Jason Lee Martin, Defendant–Appellant.**

**Nos. 26383, 26523.**

Intermediate Court of Appeals of Hawai'i.

Aug. 18, 2005.

Mark R. Zenger, Lihue, on the briefs, for Defendant–Appellant Richard Iwatate.

Peter M. Morimoto, Lihue, on the briefs, for Defendant–Appellant Jason Lee Martin.

Aaron Kakinami, Deputy Prosecuting Attorney, County of Kaua'i, on the briefs, for Plaintiff–Appellee.

FOLEY, Acting C.J., NAKAMURA and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

In this consolidated appeal, Defendant–Appellant Richard Iwatate (Iwatate) appeals from the Judgment filed on January 8, 2004, and Defendant–Appellant Jason Lee Martin (Martin) appeals from the Judgment filed on March 17, 2004. Both Judgments were filed in the Circuit Court of the Fifth Circuit [1] (circuit court).

## I.

On April 5, 2002, pursuant to a search warrant for Iwatate, Iwatate was stopped by police as he was driving his father's pickup truck, in which Martin was a passenger. The search warrant authorized the police to search: "The person of Richard Iwatate ... and any personal belongings such as fanny-packs or any type of bags. Any personal, rental or borrowed vehicle that Richard Iwatate is operating or occupying, including any compartments of that vehicle."

Iwatate was indicted on March 17, 2003 for Promoting a Dangerous Drug in the Second Degree, Unlawful Use of or Possession with Intent to Use Drug Paraphernalia, Place to Keep Loaded Firearm, Place to Keep Pistol or Revolver (2 counts), and Possession of a Switchblade Knife. In the same indictment, Martin was charged with Promoting a Dangerous Drug in the Second Degree, Unlawful Use of or Possession with Intent to Use Drug Paraphernalia (2 counts), and Promoting a Dangerous Drug in the Third Degree.

On June 27, 2003, Iwatate filed a motion to suppress evidence, compel disclosure of confidential informant, and/or dismiss indictment with prejudice (Motion). Martin filed a joinder in the Motion on August 8, 2003.[2]

---

1. The Honorable Clifford L. Nakea presided.

2. Under *State v. Tau'a*, 98 Hawai'i 426, 49 P.3d 1227 (2002), it would appear that Jason Lee

In the Motion, Iwatate contended that: (1) the search warrant was invalid on its face because it amounted to an unconstitutional general warrant that failed to describe with particularity the vehicle to be searched; (2) the affidavit in support of the search warrant contained false information, and, without the false information, the affidavit would have been insufficient to establish probable cause; (3) material falsehoods in the affidavit called into question the reliability and credibility of the confidential informant (CI); and (4) the State's refusal to disclose the identity of the CI infringed on Iwatate's constitutional rights. The circuit court denied the Motion and, on October 20, 2003, issued its "Findings of Fact; Conclusions of Law; Order Denying Defendant Richard Iwatate's Motion to: (1) Suppress Evidence; (2) Compel Disclosure of Confidential Informant and/or Dismiss Indictment with Prejudice" (Order Denying Motion), which stated in relevant part:

### FINDINGS OF FACT

1. In a one-year period from late March 2001 to late March 2002, Kauai Police Department ("KPD") Officer Howell Kaleohano ("Kaleohano") participated in three controlled buys of controlled substances where the buyer was CI.

2. In each of the controlled buys, CI proved to be reliable and credible, and each buy resulted in CI procuring controlled substances as contemplated by Kaleohano. One controlled buy resulted in the issuance of a search warrant—which in turn—resulted in an arrest and a pending court case.

3. Kaleohano received information from CI detailing: (i) that CI has been a personal friend of Iwatate for the past year; (ii) that CI knows Iwatate to be a Japanese male, 5'4" to 5'5" tall, weighing 150–160 pounds, in his late thirties, with black hair and brown eyes; (iii) that Iwatate is selling methamphetamine ("ice") at various locations on the Island of Kauai; (iv) that Iwatate has approached CI within the past year and offered to sell ice to CI; (v) that Iwatate has sold ice to CI in the past; (vi) that Iwatate's method of operation is to have potential ice buyers contact Iwatate telephonically to arrange a meeting place for an ice transaction, and then that Iwatate uses various different motor vehicles to complete the ice transactions at various locations on Kauai; and (vii) that Iwatate uses different vehicles to complete his ice transactions in an effort to thwart law enforcement efforts.

4. Kaleohano conducted a drivers' licence [sic] check on Iwatate, which revealed that Iwatate is listed as 5'6" in height, weight 175 pounds, black hair and brown eyes, and 40 years of age. Kaleohano found this registered description to be a close match to the one provided by CI.

5. Based on CI's information, Kaleohano's independent verification, and Kaleohano's previous encounters with CI, which showed CI to be reliable and credible, Kaleohano arranged a controlled buy wherein CI would attempt to purchase ice from Iwatate.

6. The controlled buy occurred between March 29, 2002 and April 4, 2002.

7. The controlled buy occurred with Iwatate delivering the ice to CI in a hand-to-hand transaction through a front passenger window while Iwatate was a front-seat passenger in a vehicle driven by a caucasian male.

8. The controlled buy was continuously monitored and otherwise properly controlled and supervised by Kaleohano and other KPD officers.

9. The controlled buy occurred in a manner consistent with CI's previous account of Iwatate's method of operation, and resulted in CI procuring an amount of ice from Iwatate.

10. On April 4, 2002, and based on the aforementioned information, Kaleohano (sometimes hereinafter referred to as "Affiant") prepared an affidavit ("affidavit") in support of a search warrant targeting Iwa-

---

Martin (Martin), as a passenger in the vehicle driven by Richard Iwatate (Iwatate), lacked standing to join in Iwatate's motion. This issue was neither raised nor addressed below or on appeal. Because we conclude Iwatate's motion lacked merit, it is not necessary for us to sua sponte address Martin's standing.

tate, and seeking to search for ice and related contraband.

11. A search warrant issued on April 4, 2002.

12. On April 5, 2002, the search warrant was executed pursuant to a traffic stop, as Iwatate was driving his father's silver Chevrolet pickup truck, in which Co–Defendant Martin was a passenger.

13. The ensuing search of the vehicle resulted in the seizure of, *inter alia:* (i) over 1/8 ounce of ice; (ii) over $2,000 cash; (iii) a digital scale; (iv) drug notes; (v) numerous zip-lock packets (many with ice residue); (vi) three torches and one mini-torch, three glass pipes with ice residue, a silver spoon, a cut straw with one end sealed, a scraper, and rolling papers; (vii) a loaded revolver; (viii) a semi-automatic pistol; (ix) a semi-automatic rifle; (x) numerous rounds of ammunition (including at least 113 hollow-point bullets); (xi) a switchblade knife; and (xii) a scanner connected to the truck[']s power supply.

14. On June 27, 2003, Iwatate (through his legal counsel) filed the instant Motion to: (1) Suppress Evidence; (2) Compel Disclosure of Confidential Informant and/or Dismiss Indictment with Prejudice, in which Co–Defendant Martin joins.

15. The Court held a hearing on the Motion on September 4, 2003.

16. At the hearing the Court received into evidence the search warrant and affidavit, and heard the testimony of Iwatate and Kaleohano, as well as the arguments of counsel.

17. Iwatate testified that while he did deal ice during the period in question, he never rented or borrowed vehicles, but rather drove exclusively his father's silver Chevrolet pickup truck to make ice transactions, and never delivered ice to anyone while riding as a passenger in anyone's vehicle.

18. Essentially, Iwatate's assertions form the basis for his Motion. If what Iwatate testified to is true, then the affidavit in support of the warrant contains many material false statements of fact—without which—probable cause would be lacking, or at a minimum the CI would need to be revealed to determine where the material false statements emanate from, and what the truth is regarding the investigation of Iwatate.

19. Kaleohano's testimony consisted largely of his recollection of what he saw during the controlled buy. He related that he saw Iwatate riding as a passenger in a vehicle that pulled near CI, and that CI walked next to the passenger side window as Iwatate sat inside the vehicle. Kaleohano also acknowledged that he did not call rental car companies on Kauai to check if Iwatate had rented vehicles from rental car companies.

20. Kaleohano's testimony was consistent with the supporting affidavit, and was credible. Iwatate's testimony was self-serving, frequently evasive and/or misleading, and not credible.

Based on the foregoing findings, the Court concludes as follows:

### CONCLUSIONS OF LAW

1. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted. *Hawai'i Constitution, Article I,* § 7.

2. Where a search warrant relies on an affidavit of a police officer, and the affidavit is based on information supplied by a confidential informant, the affidavit must set out some underlying circumstances from which the informant can conclude that contraband was where he/she claims, and must also set out some underlying circumstances from which the affiant can conclude that the informant's information is credible or his/her information reliable. *State v. Davenport,* 55 Haw. 90, 93–94[, 516 P.2d 65, 68] (1973) (citing *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964)).

3. The proponent of a motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaii Constitution. *State v. Kaleohano,* 99 Hawai'i 370[, 375, 56 P.3d 138, 143] (Hawaii 2002).

4. In light of Iwatate's and Kaleohano's testimony, the exhibits presented, and the arguments of counsel, Iwatate: (i) failed to undermine the credibility of the CI; (ii) failed to show the untruthfulness of CI's reports to Kaleohano; (iii) failed to undermine the credibility of Kaleohano; and (iv) failed to show any material untruthfulness in the affidavit.

5. The supporting affidavit in this case provides: (i) a history of Affiant's prior contacts with the CI, which show that the CI provided previously reliable information to law enforcement; (ii) a history of the CI's year-long personal friendship with Iwatate; (iii) CI's account of when Iwatate approached the CI within the past year and offered to sell ice to the CI; (iv) CI's detailed account of Iwatate's method of dealing ice using different vehicles; (v) Affiant's corroboration of the CI's description of Iwatate through Affiant's verification of Iwatate's physical description; and (vi) Affiant's corroboration of the CI's account of Iwatate's method of dealing of ice through the controlled buy where Iwatate dealt ice while a passenger in a vehicle.

6. Based on the foregoing, the supporting affidavit provided sufficient indicia of the reliability of CI's information, and sufficient facts and underlying circumstances to generate probable cause to believe that Iwatate would be in possession of ice, and would be transporting it in any of a number of different vehicles in which he was either the operator or an occupant. [*Davenport,* 55 Haw. at 93–94, 516 P.2d at 68.]

7. In light of the facts contained in the supporting affidavit, the authorization in the search warrant to search any personal, rental, or borrowed vehicle that Iwatate is operating or occupying was not unconstitutionally overbroad, and was sufficiently particularized. *People v. Sanchez,* 116 Cal. App.3d 720, 172 Cal.Rptr. 290 (1981).

8. Based on the testimony adduced at the hearing of the Motion, and after the Court's sedulous review of the affidavit in support of the search warrant, the Court concludes that the affidavit does not contain material misrepresentations of fact or false information, and is therefore sufficient to establish probable cause.

9. If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, the judge may require the identity of the informer to be disclosed. *Hawaii Rules of Evidence, Rule* 510 *(c)(3).*

10. The Court concludes that the Affiant received information from the CI, who the Affiant reasonably believed to be both reliable and credible, as Affiant knew that the CI was previously reliable, and as Affiant corroborated CI's current information through an identity check of Iwatate and through a controlled buy. *Id.*

11. That [sic] Court concludes that Iwatate did not show that failing to disclose the identity of the CI infringed on Iwatate's constitutional rights. *Id.*

On October 30, 2003, Iwatate pled guilty to Promoting a Dangerous Drug in the Second Degree (Count 1), in violation of Hawaii Revised Statutes (HRS) § 712–1242(1)(b) (1993 & Supp.2001).[3] In his plea agreement, Iwa-

---

3. Hawaii Revised Statutes (HRS) § 712–1242 (1993 & Supp.2001) provides in relevant part:

§ 712–1242 **Promoting a dangerous drug in the second degree.** (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:

. . . .

(b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:

(i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or cocaine or any of their respective salts, isomers, and salts of isomers; or

tate specifically reserved his right to appeal from the Judgment to seek a review of the circuit court's Order Denying Motion. Iwatate was sentenced to ten years of imprisonment with a mandatory minimum term of imprisonment of four years.

On October 30, 2003, Martin pled guilty to Promoting a Dangerous Drug in the Third Degree (Count 3) in violation of HRS § 712–1243 (1993 & Supp.2001).[4] Martin also specifically reserved the right to appeal from his Judgment to seek review of the Order Denying Motion. Martin was sentenced to five years of probation with special conditions.

The State dismissed the remaining charges against Iwatate and Martin. Iwatate and Martin filed separate notices of appeal,[5] and their appeals were consolidated on July 14, 2004.

On appeal, Iwatate and Martin contend the circuit court erred when it denied the Motion because (1) the search warrant was a general warrant, and (2) even if the search warrant was not a general warrant, the refusal to disclose the identity of the CI constituted an infringement of Iwatate's constitutional rights.

The State counters that (1) the search warrant stated with sufficient particularity the vehicle to be searched and thus was not overly broad, and (2) the testimony at the suppression hearing was consistent with the contents of the search warrant affidavit and the facts contained therein were sufficient to justify Officer Kaleohano's reliance on the CI.

## II.

### A. Motion to Suppress Evidence

 Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/wrong standard. Furthermore, . . . the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own

---

(ii) One-fourth ounce or more, containing any dangerous drug[.]

. . . .

(2) Promoting a dangerous drug in the second degree is a class B felony.

(3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the second degree under this section involved the possession or distribution of methamphetamine, or any of its salts, isomers, and salts of isomers, the person convicted shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment, the length of which shall be not less than six months and not greater than five years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

4. HRS § 712–1243 (1993 & Supp.2001) provides:

§ 712–1243 **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

(2) Promoting a dangerous drug in the third degree is a class C felony.

(3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.

5. Iwatate timely appealed. Martin filed his notice of appeal on April 20, 2004, thirty-four days after entry of the Judgment in his case. The Hawai'i Supreme Court has made exceptions to the requirement of Hawai'i Rules of Appellate Procedure Rule 4(b)(1) that the notice of appeal be timely filed when, in a defendant's first appeal from a criminal conviction, the belated filing of the appeal is the result of defendant's counsel's failure to comply with procedural rules. *State v. Knight,* 80 Hawai'i 318, 323–24, 909 P.2d 1133, 1138–39 (1996); *State v. Erwin,* 57 Haw. 268, 554 P.2d 236 (1976). We conclude that Martin's appeal is not precluded by the untimely filing.

Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.

*State v. Balberdi*, 90 Hawai'i 16, 20–21, 975 P.2d 773, 777–78 (App.1999) (quoting *State v. Anderson*, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997)).

■ Consequently, we "review the circuit court's ruling on a motion to suppress *de novo* to determine whether the ruling was right or wrong." *State v. Eleneki*, 106 Hawai'i 177, 179, 102 P.3d 1075, 1077 (2004).

## B. Search & Seizure—Issuance of a Search Warrant

■ In *State v. Navas*, 81 Hawai'i 113, 913 P.2d 39 (1996), the Hawai'i Supreme Court held that

[u]nder the safeguards of the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution, all arrests and searches must be based upon probable cause.

Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. Direct evidence, however, is not necessary for a probable cause determination by the [judge]. The issuance of a search warrant is prohibited except upon a finding of probable cause supported by oath or affirmation.

*Id.* at 115–16, 913 P.2d at 41–42 (citations and footnotes omitted).

■ "[I]n light of ... article I, section 7 of the Hawai'i Constitution, which provides Hawai'i's citizens greater protection against unreasonable searches and seizure than the United States Constitution[,] ... the determination of probable cause for the issuance of a search warrant warrants *de novo* review on appeal." *Id.* at 123, 913 P.2d at 49.

## III.

■ Iwatate contends the circuit court erred in its Conclusion of Law No. 7:

7. In light of the facts contained in the supporting affidavit, the authorization in the search warrant to search any personal, rental, or borrowed vehicle that Iwatate is operating or occupying was not unconstitutionally overbroad, and was sufficiently particularized. *People v. Sanchez,* 116 Cal. App.3d 720, 172 Cal.Rptr. 290 (1981).

Iwatate argues:

The finding embodied in COL No. 7 is reversible error because the law requires that when a court issues a search warrant for any vehicle that a particular person might be in, the facts contained in the supporting affidavit must establish probable cause that the contraband that is the object of the search will be located in the vehicle that the target of the search warrant is driving at the time of the seizure. The law does not give the issuing magistrate the power to search any vehicle that the target of the search warrant is in at any time, at any place with whoever he might be with, as the search warrant does in this case. Such warrants are general warrants prohibited by both the federal and Hawai'i constitutions. Moreover, the lower court's reliance on *People v. Sanchez,* 116 Cal.App.3d 720, 172 Cal.Rptr. 290 (1981), is misplaced. That case shows that the Search Warrant issued on April 4, 2002 is in fact a general warrant.

In *People v. Sanchez,* 116 Cal.App.3d 720, 172 Cal.Rptr. 290 (1981), the California Court of Appeals affirmed the trial court's denial of defendant's motion to quash a search warrant that in part authorized a search of "any vehicle under [a heroin dealer's] control or occupied by him at the time the warrant" was served. *Id.* at 725, 172 Cal.Rptr. 290 (brackets in original omitted). The Court of Appeals concluded there was "nothing improper about the authorization to search any vehicle under [the dealer's] control or occupied by him at the time the warrant was served." *Id.* at 728, 172 Cal.Rptr. 290. This conclusion was based on the affidavit submitted by a law enforcement officer that "clearly provided probable cause for the issuing magistrate to believe that [the dealer] would be supplying [the intermediary] with heroin la-

ter that evening and that he would be transporting the contraband either in one of his own vehicles, or in one he had borrowed." *Id.* at 727–28, 172 Cal.Rptr. 290.

■■■■■ The United States and Hawai'i Constitutions require search warrants to describe with particularity the place to be searched and the persons or things to be seized. U.S. Const. amend. IV; Hawai'i Const. art. I, § 7. The Hawai'i Supreme Court has stated that this particularity requirement "is to limit the police as to where they can search, for otherwise the constitutional protection against warrantless searches is meaningless." *State v. Woolsey,* 71 Haw. 638, 640, 802 P.2d 478, 479 (1990).

The standard for determining whether a search warrant meets the requirement of particularity "is one of practical accuracy rather than technical nicety," *United States v. Goodman,* 312 F.Supp. 556, 557 (N.D.Ind.1970) (quoting *United States v. Gomez,* 42 F.R.D. 347 (S.D.N.Y.1967)), and it is not necessary that the description of the place to be searched be as specific as in a recorded deed. *Morales v. State,* 44 Wis.2d 96, [105,] 170 N.W.2d 684, 689 (1969). "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended," *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925), and "distinguish it from other places in the community." *Ex parte Flores,* 452 S.W.2d 443, 444 (Tex. Crim.App.1970).

. . . .

A determination on whether a search warrant complies with constitutional particularity requirements must be made "on a case-by-case basis, taking into account all of the surrounding facts and circumstances." *State v. Kealoha,* 62 Haw. 166, 170–71, 613 P.2d 645, 648 (1980). The cornerstone of such a determination is "the language of the warrant itself." *Id.* at 171, 613 P.2d at 648.

*State v. Matsunaga,* 82 Hawai'i 162, 166 & 167, 920 P.2d 376, 380 & 381 (App.1996) (brackets in original omitted; bracketed material added).

We agree with the circuit court that "the authorization in the search warrant to search any personal, rental, or borrowed vehicle that Iwatate [was] operating or occupying was not unconstitutionally overbroad, and was sufficiently particularized." This authorization was based on probable cause that "Iwatate would be in possession of ice, and would be transporting it in any number of different vehicles in which he was either the operator or an occupant." Conclusion of Law No. 6. Given the surrounding facts and circumstances, a more particularized description of the vehicle Iwatate would be using to transport ice would have been difficult. *State v. Kealoha,* 62 Haw. 166, 170–71, 613 P.2d 645, 648 (1980).

### IV.

■■■ Iwatate's second and final point on appeal that the circuit court erred because it refused to disclose the identity of the CI is also without merit. Hawaii Rules of Evidence (HRE) Rule 510 provides in relevant part:

> **Rule 510 Identity of informer.** (a) Rule of privilege. The government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.
>
> (b) Who may claim. The privilege may be claimed by an appropriate representative of the government, regardless of whether the information was furnished to an officer of the government or of a state or subdivision thereof. The privilege may be claimed by an appropriate representative of a state or subdivision if the information was furnished to an officer thereof, except that in criminal cases the privilege shall not be allowed if the government objects.
>
> (c) Exceptions.
>
> . . . .
>
> (3) Legality of obtaining evidence. If information from an informer is relied upon to establish the legality of the

means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, the judge may require the identity of the informer to be disclosed. The judge shall, on request of the government, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this paragraph except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government.

The 1980 Commentary to Rule 510 states in part:

The intent of the rule is to balance the necessity for effective law enforcement machinery and the requirement of constitutional safeguards for the defendant. The rule restates existing law. In *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the court held that no constitutional requirement dictated disclosure of the identity of an informant for the sole purpose of challenging a finding of probable cause for issuance of a search or arrest warrant. See also *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

The Hawaii Supreme Court has ruled similarly. In *State v. Delaney*, 58 Haw. 19, 24, 563 P.2d 990, 994 (1977), the court held: "[N]either the federal nor state constitutions dictate disclosure of an informer's identity where the sole purpose is to challenge the finding of probable cause. A trial court may, in its discretion, require disclosure if it believes that the officer's testimony [regarding the informer] is inaccurate or untruthful." Relying on *McCray v. Illinois*, supra, and the previous decision in *State v. Texeira*, 50 Haw. 138, 433 P.2d

593 (1967), the *Delaney* court also held that the trial court properly disallowed questions that might indirectly disclose the informer's identity.

(Italics added.)

In this case, the State asserted the privilege pursuant to HRE Rule 510, and the relevant exception under HRE Rule 510(c)(3) was inapplicable. The circuit court judge was satisfied that information received by the officer from the CI was "reasonably believed to be reliable or credible." Because the circuit court judge did not believe that the police officer's testimony regarding the CI was "inaccurate or untruthful," the judge did not err in not requiring disclosure of the CI's identity "for the sole purpose of challenging the finding of probable cause" for issuance of the search warrant.

## V.

We affirm the Judgment as to Defendant–Appellant Richard Iwatate filed on January 8, 2004 and the Judgment as to Defendant–Appellant Jason Lee Martin filed on March 17, 2004 in the Circuit Court of the Fifth Circuit.