**NOT FOR PUBLICATION  IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000160
31-MAR-2021
08:23 AM
Dkt. 166 MO**

NO. CAAP-18-0000160

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
MICHELLE SALVAS, Defendant and
CORY SARMIENTO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 5PC-13-1-00442)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Cory Sarmiento (**Sarmiento**) appeals from the February 8, 2018 judgment of conviction entered by the Circuit Court of the Fifth Circuit (**Circuit Court**).[1]  After a jury trial, Sarmiento was found guilty of two counts of Promoting a Dangerous Drug in the Third Degree (**Counts 1 and 3**) in violation of Hawaii Revised Statutes (**HRS**) § 712-1243 (2014),[2] two counts of Prohibited Acts Related to Drug Paraphernalia

---

[1]  The Honorable Randal G.B. Valenciano presided.

[2]  HRS § 712-1243 provides:

> **§712-1243  Promoting a dangerous drug in the third degree.**  (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
> (2)  Promoting a dangerous drug in the third degree is a class C felony.

(**Counts 2 and 4**) in violation of HRS § 329-43.5(a)(2010),[3] one count of Promoting a Detrimental Drug in the Third Degree (**Count 5**) in violation of HRS § 712-1249 (2014),[4] and one count of Resisting an Order to Stop a Motor Vehicle in the Second Degree (**Count 6**) in  violation of HRS § 710-1027 (2014 and Supp. 2017).[5] Sarmiento was found not guilty of one count of Resisting Arrest (**Count 7**), a violation of HRS § 710-1026(1)(a) (2014).

Sarmiento was sentenced to five years in prison for Counts 1 and 3, thirty days in jail for Count 5, one year for Count 6, and various monetary fines, with the sentence of incarceration for Counts 1 through 5 to be served concurrently and consecutively to Count 6.

On appeal, Sarmiento argues the Circuit Court erred in: (1) denying his May 16, 2014 Motion to Identify Confidential

---

[3]  HRS § 329-43.5 provides, in relevant part:

> **§329-43.5 Prohibited acts related to drug paraphernalia.**
> (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

[4]  HRS § 712-1249 provides:

> **§712-1249 Promoting a detrimental drug in the third degree.**  (1) A person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount.
> (2) Promoting a detrimental drug in the third degree is a petty misdemeanor.

[5]  HRS § 710-1028 provides:

> **§710-1028  Resisting an order to stop a motor vehicle.**
> (1) A person commits the offense of resisting an order to stop a motor vehicle if the person intentionally fails to obey a direction of a law enforcement officer, acting under color of the law enforcement officer's official authority, to stop the person's vehicle.
> (2) Resisting an order to stop a motor vehicle is a misdemeanor.

Informant; (2) denying co-defendant Michelle Salvas's (**Salvas**)[6] March 14, 2016 Motion to Quash Search Warrant and Suppress Evidence (**Motion to Quash**), in which Sarmiento had joined; (3) denying his Motion to Compel Discovery (**Motion to Compel**);[7] (4) granting the State's First Motions *in Limine* Items 2, 3, 5, 7, and 8; (5) granting the State's second motion *in limine*; (6) denying Sarmiento's counsel the opportunity to cross-examine relevant witnesses at evidentiary hearings; (7) denying Sarmiento's counsel the opportunity to argue at a hearing on August 4, 2016; and (8) exercising jurisdiction as to counts 1 and 3 because the charging document did not allege constructive possession and was thus insufficient.

For the reasons discussed below, we vacate the Judgment and remand for further proceedings.

I.   **Background**

A.   **Issuance of Search Warrant**

In the affidavit attached to the search warrant, Kauaʻi County Police Department (**KPD**) Officer Colin Nesbitt (**Officer Nesbitt**) attested to the following:

In July 2012, he received a tip from a "cooperative source" that Sarmiento was distributing crystal methamphetamine from an older model, white four-door sedan with license plate ending in 524.

Officer Nesbitt compared the source's description to KPD records and showed a photo of Sarmiento to the source, who confirmed it was the same person.  Officer Nesbitt and Sergeant Darren Rose (**Sergeant Rose**) arranged for the controlled purchase of crystal methamphetamine from Sarmiento by the cooperative source.  Sometime between July 5 and 9, 2012, they met with the source at a prearranged location in the Kawaihau District, and

---

[6]  Co-defendant Salvas was also convicted on certain charges and appealed her convictions.  See State v. Salvas, No. CAAP-18-0000121, 2021 WL 276150 (Haw. App. Jan. 27, 2021) (SDO).

[7]  Salvas filed the subject Motion on April 26, 2016, and Sarmiento filed a joinder in the motion on May 3, 2016.

searched the source's vehicle for illegal narcotics, contraband, weapons or money and found none.

Officer Nesbitt recorded serial numbers on money from the KPD "buy fund" and gave the money to the source.  The source made prior arrangements to meet Sarmiento at a predetermined location to purchase crystal methamphetamine.  The officers instructed the source to travel along a prearranged route to the place of the buy, purchase an amount of drugs, and reunite with the officers at a second meet location.  Sergeant Rose and Officer Nesbitt followed and monitored the source using unmarked vehicles to ensure that the source did not have contact with anyone along the route.

Sarmiento was at the buy location when the source and the officers arrived and was standing next to the driver's side of a white, four-door Dodge sedan with the license plate HFM-524. Sarmiento approached the source's vehicle and met with the source.

After a few minutes, the source left the buy location and traveled directly to the meet location.  Sergeant Rose and Officer Nesbitt followed and monitored the source from the buy location to the second meet location.  At the second meet location, the source gave Officer Nesbitt a small clear packet containing a white crystalline substance.  The officers searched the source and the source's vehicle for illegal narcotics, contraband, weapons or money a second time and found none. Officer Nesbitt tested the crystalline substance using a field test, and the sample tested presumptively positive for the presence of methamphetamine.

Officer Nesbitt further attested that the source relayed the details of the controlled buy, including that the source "met with Sarmiento at his white in color Dodge four door sedan" and the source handed Sarmiento the agreed amount of money in exchange for the agreed amount of crystal methamphetamine. Officer Nesbitt attested that the disclosure of the source's identity would impair the effectiveness of the source to law

4

enforcement and that the source fears for his or her safety if the source's identity was revealed.

Regarding the source's reliability, Officer Nesbitt attested that:

> while participating in this controlled purchase of Crystal Methamphetamine from Sarmiento as well as other controlled purchases the [Source] has been proven to be reliable and credible. That this controlled purchase from Sarmiento is consistent with other controlled purchases conducted by members of the Kauai Police Department's Vice Narcotics Unit.
> The [Source] has participated in more than 30 unrelated controlled purchases. As a result of these unrelated purchases in unrelated cases completed by the [Source], 19 state search warrants have been obtained, 19 persons have been arrested, illegal narcotics, drug paraphernalia and guns were recovered and seized into evidence. The [Source] has been proven to be reliable and credible.

Officer Nesbitt ran a check on the white Dodge four-door sedan with the full license plate and learned that the vehicle was registered to Salvas.  Further investigation revealed that Sarmiento and Salvas were "live in boyfriend/girlfriend sharing the same address" as listed in the vehicle registration. Officer Nesbitt located the vehicle at the registered address and confirmed that it was the same vehicle used during the controlled buy.

On July 10, 2012, the District Court of the Fifth Circuit[8] granted a search warrant for Sarmiento's person, Salvas's Dodge sedan, and any luggage, bags, packages, containers, and clothing within the vehicle.

**B.    Execution of Search Warrant**

At trial, Officer Nesbitt and Sergeant Rose testified to the execution of the search warrant as follows:

Around noon on July 13, 2012, a team from KPD arrived at the Defendants' residence in Kapaʻa.  Officer Nesbitt was alerted by another KPD officer that the Dodge left the residence. Officer Nesbitt saw the Dodge on Kawaihau Road and followed the vehicle for approximately three or four minutes before losing

---

[8]  The Honorable Trudy Senda signed the search warrant.

sight of it.  Sergeant Rose testified that he saw the Dodge parked on an overgrown one lane "cane haul road" that connected Hauiki Road and Waipouli Road.  Sergeant Rose was in an unmarked regular vehicle.  He informed the other officers assigned to the operation of his location and waited for Officer Eric Caspillo (**Officer Caspillo**), who was in a marked patrol car.  When Sergeant Rose pulled up behind the Dodge, with Officer Caspillo behind him, the Dodge "took off."

Sergeant Rose and Officer Caspillo pursued the vehicle, and the Dodge pulled over to the grassy shoulder at the intersection of Hauiki and Olohena Roads and stopped.  Officer Caspillo pulled his vehicle in front of the Dodge but did not completely block the front of the Dodge.  The Dodge accelerated forward, struck the marked police vehicle, went over a small berm or embankment, and went up Olohena Road.  Sergeant Rose pursued the Dodge and notified the other officers of his location and the pursuit.

After about three-quarters of a mile, Sergeant Rose testified he saw an object ejected from the passenger window and pulled over to the side to retrieve it.  Sergeant Rose retrieved a glass bong containing a red liquid from the grass and continued the pursuit.  He did not photograph the area where he retrieved the bong or the bong itself.

The other officers stopped the Dodge on Olohena Road, about a mile from where Sergeant Rose had stopped to pick up the bong.  Sergeant Rose identified the driver of the Dodge as Sarmiento and the passenger as Salvas.  At the scene of the stop, Sergeant Rose gave the bong to Officer Nesbitt, who transferred the liquid inside to a jar at KPD headquarters and submitted it into evidence.  The Dodge was towed to KPD headquarters, where it was searched by Officers Nesbitt, Caspillo, and Arnold Cayabyab, under Sergeant Rose's supervision.  The jar's contents and items recovered from the Dodge were sent to the Honolulu Police Department lab for analysis.

## II.  Discussion

### A.  Motion to Identify Confidential Informant

Sarmiento first alleges that the Circuit Court erred by not ordering the State to disclose the identity of the confidential informant who participated in the controlled buy. We disagree.

On May 16, 2014, Sarmiento moved to identify the confidential informant arguing, *inter alia*, that the confidential informant lied about purchasing methamphetamine from him, and even if the declarations in Officer Nesbitt's affidavit were true, the affidavit did not establish probable cause to search Salvas's vehicle.  In his declaration attached to the motion, Sarmiento attested that he "did not sell anyone any methamphetamine for the period from July 5 to July 9, 2012" and he "did not transport, possess, or store any methamphetamine in Defendant Michelle Salvas's vehicle during the time period from July 5 to July 9, 2012."

After hearing the motion on June 10, 2014, the Circuit Court denied Sarmiento's motion.  On October 21, 2014, the Circuit Court entered its Findings of Fact/Conclusions of Law explaining its denial of the motion pursuant to Hawaii Rules of Evidence (**HRE**) Rule 510 and Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 16(e)(5)(ii),[9] stating:

> Upon this Court's review of the pleadings and arguments of counsel, it appears that the informer is not going to be called to testify at trial because the information provided by the informer was not the basis for any of the offenses charged against Defendant, the informer did not actively participate in any of the offenses charged, and the proof of Defendant's guilt depended on the circumstances at the time the warrant was executed and not on any information supplied by the informer; and therefore, HRE Rule 510(c)(2) does not

---

[9]  HRPP Rule 16(e)(5)(ii) provides:

> (ii) Informants. Disclosure of an informant's identity shall not be required where the informant's identity is a prosecution secret and <u>a failure to disclose will not infringe the constitutional rights of the defendant</u>. Disclosure shall not be denied hereunder of the identity of a witness intended to be produced at a hearing or trial.

(emphasis added).

7

> apply. [State v.] Kapiko, 88 Haw. [396,] 402[, 967 P.2d 228, 234 (1998)]
>
> This Court finds that the prosecution does not base its case against Defendant on activity Defendant might have undertaken in the presence of the informer, but rather on evidence of the defendant's knowing possession of the drugs at the time of the search warrant's execution on July 13, 2012.
>
> . . . .
>
> The Court is satisfied that the information was received from an informant reasonably believed to be reliable or credible.
>
> This Court finds that the public interest in protecting the flow of information, outweighs the possible significance of the informer's testimony and Defendant's due process and confrontation clause rights, and as such, the State is not required to disclose the information pursuant to [HRPP] Rule 16(e)(5)(ii).

Under HRE Rule 510, the prosecution "has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer[.]" HRE Rule 510(a).  This privilege applies as long as the defendant's constitutional rights are not infringed.  See HRPP Rule 16(e)(5)(ii); State v. Rodrigues, 88 Hawai'i 363, 368, 966 P.2d 1089, 1094 (1998); see also HRE 510 cmt. (1980) ("The intent of the rule is to balance the necessity for effective law enforcement machinery and the requirement of constitutional safeguards for the defendant.").

It has long been recognized that the determination to disclose an informant's identity requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro v. United States, 353 U.S. 53, 62 (1957).  To determine whether information regarding an informant must be disclosed, the Hawai'i Supreme Court adopted the following test as set forth by the United States Supreme Court:

> Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

State v. Opupele, 88 Hawaiʻi 433, 438, 967 P.2d 265, 270 (1998) (citations omitted).

When applying this balancing test, the U.S. and Hawaiʻi Supreme Courts have held that neither the federal nor Hawaiʻi state constitution requires the prosecution to disclose an informant's identity "where the sole purpose is to challenge the finding of probable cause." State v. Iwatate, 108 Hawaiʻi 361, 370, 120 P.3d 260, 269 (App. 2005); McCray v. Illinois, 386 U.S. 300, 312-13 (1967). However, "[a] trial court may, in its discretion, require disclosure if it believes that the officer's testimony regarding the informer is inaccurate or untruthful." Iwatate, 108 Hawaiʻi at 370, 120 P.3d at 269 (quoting State v. Delaney, 58 Haw. 19, 24, 563 P.2d 990, 994 (1977)) (brackets omitted). Furthermore, "[t]he judge has the power to require disclosure if he believes it necessary, as where the defendant has thrown some doubt on the officer's credibility, just as he would in examining an officer on an application for a warrant." State v. Texeira, 50 Haw. 138, 147, 433 P.2d 593, 600 (1967). See also HRE Rule 510(c)(3).

Here, the Circuit Court concluded that the informant's testimony was unnecessary at trial because he or she was not involved in the crime for which Sarmiento was charged, that is, possession of methamphetamine and paraphernalia on July 13, 2012. Given the record, the Circuit Court did not err in this ruling because Sarmiento's confrontation rights were not implicated and the exception under HRE Rule 510(c)(2) does not apply. See Kapiko, 88 Hawaiʻi at 402, 967 P.2d at 234 (holding the prosecution was not required to disclose the identity of the confidential informant because HRE Rule 510(c)(2) "pertains only to a situation where it is anticipated that the [informant] will give testimony necessary to a fair determination of the guilt or innocence in a criminal case"); cf. State v. Bullen, 63 Haw. 27, 32, 620 P.2d 728, 731 (1980) ("where the informant has been an active participant in the crime charged, and his testimony might

be helpful to the defense, fairness dictates that his identity be disclosed by the government.").

In turn, HRE Rule 510(c)(3) provides an exception where the judge believes that the confidential informant is not reliable or credible. Rodrigues, 88 Hawaiʻi at 367, 966 P.2d at 1093. "An affidavit in support of a finding of probable cause should 'set forth some of the underlying circumstances from which the police concluded that the objects sought to be recovered were where they claimed they were, and disclose some of the underlying reasons from which the affiant concluded that the information was reliable.'" State v. Phillips, 138 Hawaiʻi 321, 346, 382 P.3d 133, 158 (2016) (quoting State v. Sepa, 72 Haw. 141, 143-44, 808 P.2d 848, 850 (1991)) (internal quotations omitted). Although "an averment of previous reliability" supports a finding that the informant is credible, see, e.g., State v. Davenport, 55 Haw. 90, 97, 516 P.2d 65, 70 (1973) (citing Texeira, 50 Haw. at 139, 433 P.2d at 595 (holding the "provision by informer of 'accurate' information on twenty to thirty occasions satisfies 'credibility' prong of Aquilar [v. Texas, 378 U.S. 108 (1964)]")), it has not been suggested that a prior history is necessary or required. State v. Navas, 81 Hawaiʻi 29, 36, 911 P.2d 1101, 1108 (App. 1995) (hereinafter **Navas I**). "[T]he inquiry is, as it always must be in determining probable cause, whether the informant's present information is truthful or reliable." Id. (quoting State v. Sherlock, 70 Haw. 271, 274, 768 P.2d 1290, 1292 (1989)). The reliability of a confidential source's present information can be supported when the details are corroborated or independently verified by law enforcement. See id.; State v. Yaw, 58 Haw. 485, 572 P.2d 856 (1977).

In this case, Officer Nesbitt attested that the source had participated in more than 30 controlled buys, leading to 19 search warrants and 19 arrests for illegal drugs, paraphernalia, and weapons, and attested that the source "has been proven to be reliable and credible." Further, on the day of the controlled purchase from Sarmiento, Officer Nesbitt and Sergeant Rose

followed and monitored the source to and from the place of the transaction, and saw Sarmiento talking with the source.  Officer Nesbitt traced the registration of the vehicle that Sarmiento stood beside to Salvas, and attested that he later saw the vehicle at Sarmiento and Salvas's residence.  Thus, Officer Nesbitt's observations sufficiently corroborated the source's statements.  Accordingly, the HRE 501(c)(3) exception does not apply and the Circuit Court correctly denied Sarmiento's motion to disclose the source's identity.

> **B.    Motion to Quash Search Warrant and Suppress Evidence**

Sarmiento alleges error where the Circuit Court denied Salvas's Motion to Quash, which he orally joined at the hearing. In the Motion to Quash, the defendants argued, *inter alia,* that the January 13, 2016 federal indictment of KPD Lieutenant Karen Kapua (Lt. Kapua) on three counts of theft from an organization receiving federal funds and one count of money laundering could lead to an inference of falsity in Officer Nesbitt's affidavit. Arguing Officer Nesbitt's affidavit contained false statements, the Motion to Quash also sought an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

Relying on three cases, United States v. McDonald, 723 F.2d 1288 (7th Cir. 1983), United States v. Napier, 436 F.3d 1133 (9th Cir. 2006), and United States v. Igbo, Nos. 90-50406, 91-50027, 1993 WL 164865 (9th Cir. May 18, 1993) (unpublished), the Circuit Court concluded that "the defendants have not met their burden for a substantial preliminary showing that overcomes the validity of the warrant, and they're not entitled to a Franks hearing."

On appeal, Sarmiento argues the Circuit Court abused its discretion in denying the Motion to Quash because the evidence regarding Lt. Kapua was evidence substantial enough to warrant a Franks hearing.  We disagree.

An affidavit supporting a search warrant carries a presumption of validity.  McDonald, 723 F.2d at 1293–94 (quoting

<u>Franks</u>, 438 U.S. at 171).  However, the U.S. Supreme Court emphasized that this presumption can be rebutted "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]"  <u>Franks</u>, 438 U.S. at 155-56.  "[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  <u>Id.</u>, 438 U.S. at 156.

"To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  <u>McDonald</u>, 723 F.2d at 1293 (quoting <u>Franks</u>, 438 U.S. at 171).  The allegations of deliberate falsehood or of reckless disregard for the truth should point out specifically the portion of the warrant affidavit that is claimed to be false and must be accompanied by an offer of proof.  <u>Id.</u> at 1293-94.

Here, Sarmiento's offer of proof that Officer Nesbitt's affidavit was inaccurate or untruthful was his own declaration that he did not sell drugs during the period stated in the affidavit.  However, a defendant's "self-serving and doubtful denial" that he sold drugs during the period in question, without more, does not make a "substantial preliminary showing of [an] entitlement to a <u>Franks</u> hearing."  <u>Napier</u>, 436 F.3d at 1139; <u>Igbo</u>, 1993 WL 164865 at *1.  Further, except for broad accusations of police misconduct and the assertion that Lt. Kapua would have needed the cooperation of other individuals, Sarmiento fails to indicate how Lt. Kapua's indictment was material to this case or to Officer Nesbitt's affidavit.  Finally, the federal indictment against Lt. Kapua alleges events that took place in 2013 and 2014, more than a year and a half after the search and arrest in this case.

Based on this record, the Circuit Court did not err in denying an evidentiary hearing regarding the search warrant; nor did it err in denying the Motion to Quash.

**C.    Motion to Compel Discovery**

Sarmiento next alleges that the Circuit Court abused its discretion in denying Salvas's motion to compel discovery, in which Sarmiento had joined.  Sarmiento contends the items sought were necessary to obtain a hearing under Franks.  In Franks, the U.S. Supreme Court addressed whether a criminal defendant has the right to challenge the truthfulness of factual statements in an affidavit that supported a search warrant.  Id. at 155.  The court held as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

Id. at 171-72 (footnote omitted).

Here, Sarmiento's argument on appeal focuses on the requests in the Motion to Compel to obtain records of disciplinary files or investigations into Lt. Kapua and the alleged misappropriation of money from the controlled buy fund; documents showing serial numbers for the cash used in the controlled purchase from Sarmiento and copies of the money

recovered from Sarmiento and Salvas;[10] and KPD procedures regarding controlled buys, the use of informants for controlled buys, and documentation of money used for controlled buys.  The crux of Sarmiento's assertion is that obtaining these documents would help establish the need for a <u>Franks</u> hearing to show that a controlled purchase from Sarmiento never happened.

In addressing the Motion to Compel, the Circuit Court conducted an *in camera* review of the available documents at issue on appeal, except for the documents related to Lt. Kapua.  The Circuit Court ruled that the documents need not be disclosed for various reasons including protection of the source's identity, the cash used in the controlled purchase was of marginal value because there was a gap in time between the controlled purchase and when monies were later seized from the defendants, and the court had previously determined that matters related to Lt. Kapua were not relevant to the case.

Based on our review of the record, the Circuit Court properly conducted an *in camera* review to balance Sarmiento's concerns regarding whether Officer Nesbitt's affidavit was credible and the State's interest in protecting the confidentiality of the source.  Moreover, we agree with the Circuit Court that, given the gap in time between the controlled purchase and when funds were seized from Sarmiento, even if the requested documents showed Sarmiento did not have possession of any of the "buy money" when he was arrested, it would not help to show a deliberate falsehood or a reckless disregard for the truth in the affidavit supporting the search warrant to support the need for a <u>Franks</u> hearing.

---

[10]  Defendants asserted the serial numbers of money used in the controlled purchase were needed because if the numbers did not match money that was later seized from the defendants, it would corroborate their contention that a controlled purchase never occurred.  The State responded that releasing the serial numbers could allow defendants to potentially trace the identity of the source, and in any event, the money recovered from defendants when they were arrested had not been photographed and had been mingled with other forfeited funds.

Sarmiento also argues that the forfeiture and co-mingling of the money seized from him constitutes destruction of evidence.  However, as noted above, that evidence would not have helped to establish the showing needed for a <u>Franks</u> hearing.  Further, the serial numbers of the cash seized from Sarmiento were not critical to his defense because that evidence is immaterial to whether Sarmiento possessed drugs on July 13, 2012.  Any showing that the serial numbers from the controlled buy do not match the serial numbers of cash seized from Sarmiento does not exculpate him.

Finally, Sarmiento fails to provide any specific argument or authority on how KPD policies and procedures on controlled buys were pertinent.  Sarmiento does not provide argument about how such records would help to show deliberate falsehood or a reckless disregard for the truth in the affidavit supporting the search warrant, in particular that the controlled purchase from Sarmiento never actually occurred, so that he could establish the need for a <u>Franks</u> hearing.

We conclude that the Circuit Court did not abuse its discretion in denying the Motion to Compel.

**D.  Motions in Limine**

Sarmiento contends the Circuit Court erred in granting in part the State's First Motion *in Limine* and granting the State's Second Motion *in Limine*.  Specifically, Sarmiento argues the Circuit Court should have denied the motion with respect to:

> (1) Judge Kathleen Watanabe's Findings of Fact and Conclusions entered April 10, 2012 in an unrelated case, <u>State v. Sullivan, et al.</u>, Cr. No. 10-1-0153 (**Item 2**);
>
> (2) any references of alleged other acts of Sergeant Rose (**Item 3**);
>
> (3) any references of alleged other acts of Officer Nesbitt (**Item 5**);
>
> (4) cell phone videos from September 28, 2014 wherein KPD officers stopped Salvas and Sarmiento in their vehicle (**Item 7**);
>
> (5) references to an alleged 2007 FBI investigation of possible misconduct at the KPD, or regarding a particular

15

confidential informant investigated during that investigation who allegedly planted evidence in suspects' vehicles (**Item 8**); and

(6) any references of alleged other acts of Lt. Kapua. (**State's Second Motion *in Limine***)

"Because the granting or denying of a motion *in limine* is within the trial court's inherent power to exclude or admit evidence, we review the court's ruling for the abuse of discretion standard."  State v. Mark, 120 Hawaiʻi 499, 514, 210 P.3d 22, 37 (App. 2009) (internal quotation marks and citation omitted).  "However, when the trial court's order granting a motion *in limine* is an evidentiary decision based upon a decision that can 'yield only one correct result,' the standard of review is the right/wrong standard.  Id. at 514–15, 210 P.3d at 37–38 (quoting Walsh v. Chan, 80 Hawaiʻi 212, 215, 908 P.2d 1198, 1201 (1995)); Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 110, 58 P.3d 608, 621 (2002) (decisions regarding relevance are reviewed under the right/wrong standard).

### 1.    The Circuit Court Erred in Granting the State's First Motion in Limine Items 2 and 3

Sarmiento and Salvas sought to introduce findings from the Sullivan case in which Judge Watanabe found Sergeant Rose's testimony that contraband was in plain view was contradicted by an unrelated witness.  The findings stated that, "Sergeant Rose testified that he knew that if the bag was closed it would have been an illegal search for him to have unzipped the bag and searched it.  Accordingly, Sergeant Rose testified that the zipper on the bag was unzipped and that he could see the contents of the bag in plain view."  Based on the credible contradicting testimony of a witness who had no stake in the outcome of the case, Judge Watanabe found that Sergeant Rose seized the closed bag from the defendant, struggled with the bag to open it, unzipped the zipper opening the bag, and then searched the bag.

HRE Rule 608(b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking the witness'

credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence."

> [U]nder the plain language of HRE Rule 608(b), admissibility of evidence under HRE Rule 608(b) involves a two-step inquiry: (1) whether the specific conduct evidence proffered for the purpose of attacking the witness's credibility is probative of untruthfulness, and, if so, (2) whether the probative value of the evidence of the specific conduct is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence pursuant to HRE Rule 403.

State v. Su, 147 Hawaiʻi 272, 283, 465 P.3d 719, 730 (2020) (emphasis added).

In Su, the district court prohibited the defense from attacking the arresting officer's credibility by questioning him regarding three instances of conduct, including his admission in another case that he had submitted a sworn false statement to the Administrative Driver's License Revocation Office. Id. The supreme court noted that the district court stopped at step one of the HRE 608(b) analysis when it concluded that the three instances of conduct were not relevant or probative as to the testifying officer's truthfulness. Id. at 284, 465 P.3d at 731. The court found such error could not be harmless beyond a reasonable doubt because "the outcome of Su's trial hinged upon the credibility of the two [Honolulu Police Department] witnesses against him." Id. at 285, 465 P.3d at 732. "[T]he finder of fact 'should possess all relevant evidence' concerning the falsifications, and that it was "'for the [finder of fact] to decide how much weight to give the falsifications.'" Id. at 284, 465 P.3d at 731 (quoting State v. Estrada, 69 Haw. 204, 219, 738 P.2d 812, 823 (1987) (brackets omitted)). The supreme court held that on remand, Su was entitled to cross-examine the officer regarding his testimony in two earlier cases, but the extent of the cross-examination, as well as the admissibility of extrinsic evidence, if offered, would be subject to HRE Rule 403. Id.

Here, the Circuit Court did not explain why it excluded questioning related to the Sullivan proceedings, beyond saying it was not bound by Judge Watanabe's findings in that case. However, the directly contradictory witness testimony in the Sullivan proceedings was relevant to Officer Rose's credibility and probative of untruthfulness.  Moreover, Officer Rose's testimony in this case and the evidence he recovered are material to the charges against Sarmiento.  We thus conclude that pursuant to HRE Rule 608(b) and Su, Sarmiento is entitled to cross-examine Officer Rose regarding the Sullivan proceedings.  Su, 147 Hawaiʻi at 285, 465 P.3d at 732.  As in Su, however, "[t]he extent of the cross-examination, as well as the admissibility of extrinsic evidence, if offered, is subject to an HRE Rule 403 analysis." Id. at 283, 285, 465 P.3d at 730, 732; see also Salvas, 2021 WL 276150 at *8.

**2.      The Circuit Court did not err in precluding questioning of Officer Nesbitt regarding his OVUII charge (Item 5), the cell phone videos (Item 7), the 2007 FBI investigation (Item 8), or the acts of Lt. Kapua (Second Motion in Limine)**

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty."  HRE Rule 609.  For impeachment purposes, an opposing party may admit proof of only "the class of crimes involving dishonesty, false statement, or perjury."  State v. Pacheco, 96 Hawaiʻi 83, 99, 26 P.3d 572, 588 (2001) (brackets, quotation marks and citation omitted).  "[A] prior conviction may come in if, but only if, the trial judge, in his [or her] discretion, feels that the party offering the evidence has satisfactorily shown that the conviction to be proved rationally carries probative value on the issue of the truth and veracity of the witness."  State v. Estrada, No. CAAP-18-0000521, 2020 WL 3027400 at *2 (Haw. App. June 5, 2020) (SDO) (quoting Asato v. Furtado, 52 Haw. 284, 293, 474 P.2d 288, 295 (1970)) (interpreting prior version of rule).  Operating a vehicle under

18

the Influence of an Intoxicant (**OVUII**) is not a crime involving dishonesty.  See Asato, 52 Haw. at 293, 295, 474 P.2d at 295-96 ("conviction for heedless and careless driving bears no relation to a witness' credibility").  Therefore, the Circuit Court did not abuse its discretion when it concluded that the OVUII conviction was not probative on the issue of Officer Nesbitt's truthfulness.

Sarmiento claims that the Circuit Court erred when it did not allow him to introduce cell phone video taken by the defendants on September 28, 2014, which they allege show that KPD officers stopped their car, falsely claimed to have a warrant for one or both of them, and accused them of having contraband visible in the back seat.  However, the video footage is not part of the record on appeal and the defendants do not identify which KPD officers were involved in the incident or which officer-witnesses they should have been allowed to confront.  See Salvas, No. CAAP-18-0000121, 2021 WL 276150 at *9.  Thus, this argument lacks merit.

Next, notwithstanding Sarmiento's contention that a 2007 FBI investigation of KPD's drug buy informants is relevant and probative to this case involving a controlled buy in 2012, he provides minimal and conclusory argument.  In short, Sarmiento fails to establish any relevance of this evidence to this case, and thus the Circuit Court did not err in granting the State's motion in limine in this regard.

Finally, as discussed above, Sarmiento fails to establish that Lt. Kapua's indictment was relevant to this case or pertinent to the discovery of contraband in the Dodge.  Moreover, because Lt. Kapua did not testify at trial, Sarmiento was not deprived of his right to cross-examine Lt. Kapua.  See also Salvas, 2021 WL 276150 at *10.

Thus, the Circuit Court did not err in granting the State's First Motion in Limine Items 5, 7, and 8, and the State's Second Motion in Limine.

### E.    June 10, 2014 Hearing

Sarmiento's sixth point on appeal is that the Circuit Court denied him due process and abused its discretion when it did not allow his counsel, Myles Breiner, the opportunity "to cross-examine relevant witnesses at key evidentiary hearings." (capitalization altered).  Based on the citations given to where the error was allegedly made and objected to, it appears that Sarmiento is challenging the Circuit Court's refusal to allow Breiner to cross-examine Officer Caspillo regarding Salvas's statement made at the KPD headquarters.  Salvas's statement was suppressed.  The State argues any error, therefore, was harmless.

Sarmiento contends he was prejudiced because "we don't know what other evidence may have been adduced on cross – possibly evidence negating Sarmiento's statement."  This argument fails, however, because Sarmiento does not point to any part of Salvas's statements, if admitted, that would have negated his own statement to police, and moreover, Sarmiento's argument is wholly speculative.  We thus conclude there was no error.

### F.    August 4, 2016 Hearing

Sarmiento's seventh point on appeal alleges that he was denied the opportunity to argue during the August 4, 2016 hearing on the motions *in limine*.  At that hearing, Sarmiento's counsel, Breiner, appeared by phone and another attorney, appearing specially for the purpose of the hearing, was in the courtroom. The court told stand-in counsel that if Breiner wanted to make argument he would need to appear.  No objection was made.  Errors to which no objection is made before the trial court are typically deemed waived, except that the appellate court may notice plain error affecting substantial rights.  State v. Miller, 122 Hawaiʻi 92, 100, 223 P.3d 157, 165 (2010).

HRPP Rule 58 allows the court to allow counsel to appear by telephone or other electronic means for any pretrial or status conference, but also provides that "[i]f, at any time during a conference, hearing or proceeding conducted by telephone or other electronic means, the court determines personal

appearance is necessary, the court may continue the matter and require a personal appearance."  HRPP Rule 58.  Moreover, trial courts have inherent judicial power to require a party to appear in person for a hearing.  See Tamman v. Tamman, No. CAAP-13-0000109, 2015 WL 9594740 at *4 (Haw. App. Dec. 31, 2015) (mem. op.); Stump v. Stump, No. CAAP-12-0001056, 2014 WL 1744081 at *7  (Haw. App. April 30, 2014) (mem. op.) (quoting State v. Sakamoto, 101 Hawaiʻi 409, 415, 70 P.3d 635, 641 (2003) (Acoba, J., concurring) ("courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them").  "Affording trial courts discretion in this regard . . . reflects cognizance on the part of appellate courts about the real concerns that trial courts may have over the use of telephonic testimony or appearances that are not pre-planned and subject to reasonable limitations and/or protections."  Stump, 2014 WL 1744081 at *7.

Given the wide discretion to control the courtroom and the on-the-record acknowledgment of the court's prohibition regarding arguments by phone, the Circuit Court did not abuse its discretion in refusing Sarmiento's counsel from arguing over the phone.  Cf. Stomber v. Stomber, No. 29064, 2009 WL 2625237 at *2 (Haw. App. Aug. 27, 2009) (SDO) (abuse of discretion where, on day of hearing, family court reversed its earlier decision that husband/father could appear by phone).

G.    **The charges for Possession of a Dangerous Drug were sufficient**

Sarmiento's final point of error is that the Circuit Court "lacked jurisdiction" over Counts 1 and 3, Possession of a Dangerous Drug, because the felony information document was deficient for not alleging constructive possession under HRS § 712-1251 (2014).[11]  We first note that a "flawed [charging]

---

[11]  HRS 712-1251 provides:

**§712-1251 Possession in a motor vehicle; prima facie evidence.**  (1) Except as provided in subsection (2), the
(continued...)

instrument does not abrogate the jurisdiction of the court, which is established by statute and invoked by a charge of a cognizable offense prescribed by law." Schwartz v. State, 136 Hawaiʻi 258, 272, 361 P.3d 1161, 1175 (2015).

We read Sarmiento's final point on appeal as challenging the sufficiency of the charges. Based on our review of the Felony Information And Non-Felony Complaint filed on December 4, 2013, as well as the information provided to Sarmiento before he challenged the felony information toward the end of trial, we conclude the charges for Counts 1 and 3 are sufficient.

Whether the charge is stated orally or in a written information, indictment, or complaint, it "must sufficiently allege all of the essential elements of the offense charged[.]" State v. Wheeler, 121 Hawaiʻi 383, 391, 219 P.3d 1170, 1178 (2009) (quoting State v. Jendrusch, 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977)). The sufficiency of the charging instrument is determined, among other things, by "whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet." Id. (quoting State v. Wells, 78 Hawaiʻi 373, 379-80, 894 P.2d 80, 76-77 (1995)) (brackets omitted). "A charge defective in this regard amounts to a failure to state an offense, and a

----

[11](...continued)
presence of a dangerous drug, harmful drug, or detrimental drug in a motor vehicle, other than a public omnibus, is prima facie evidence of knowing possession thereof by each and every person in the vehicle at the time the drug was found.
(2)    Subsection (1) does not apply to:
(a)    Other occupants of the motor vehicle if the substance is found upon the person of one of the occupants therein;
(b)    All occupants, except the driver or owner of the motor vehicle, if the substance is found in some portion of the vehicle normally accessible only to the driver or owner; or
(c)    The driver of a motor vehicle who is at the time operating it for hire in the pursuit of the driver's trade, if the substance is found in a part of the vehicle used or occupied by passengers.

conviction based upon it cannot be sustained, for that would constitute a denial of due process."  Id. (quoting Jendrusch, 58 Haw. at 281, 567 P.2d at 1240).

"In general, where the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient."  Wheeler, 121 Hawai'i at 393, 219 P.3d at 1180 (internal quotations, brackets and citations omitted).  In determining whether a charge meets constitutional requirements, we must examine "whether the language actually used in the charge provides fair notice to the defendant."  Id. at 394, 219 P.3d at 1181; see also State v. Kauhane, 145 Hawai'i 362, 369-70, 452 P.3d 359, 366-67 (2019) ("When a criminal defendant challenges the sufficiency of a charge in a timely manner, an appellate court will uphold that charge if: (1) it contains the elements of the offense; and (2) it sufficiently apprises the defendant of what the defendant must be prepared to meet.").

Furthermore, "in determining whether the accused's right to be informed of the nature and cause of the accusation against him or her has been violated, we must look to all of the information supplied to him or her by the State to the point where the court passes upon the contention that the right has been violated."  State v. Hitchcock, 123 Hawai'i 369, 379, 235 P.3d 365, 375 (2010) (brackets and citations omitted).

Here, on July 20, 2017, after the State had rested its case, Sarmiento orally moved for judgment of acquittal based, inter alia, on the assertion that there was insufficient evidence on the issue of possession.  The Circuit Court stated that, with regard to the issue of possession, it would rely on HRS § 712-1251, possession within a vehicle.  At this point, Sarmiento's counsel argued that the State had not given notice that it would rely on HRS § 712-1251 and should have given notice in the original pleading documents.  The Circuit Court denied

Sarmiento's motion for judgment of acquittal based on HRS § 712-1251.

Counts 1 and 3 in the felony information charge Sarmiento with possession of methamphetamine, in any amount, setting out the elements of the offense and tracking the language in HRS § 712-1243.[12]  Sarmiento argues this situation is akin to Wheeler and State v. Nesmith, 127 Hawaiʻi 48, 276 P.3d 617 (2012), asserting that "the definitions of the charges were more narrowly defined than what the general public would assume via common knowledge and general usage."  Sarmiento contends the charges should have alleged possession of a dangerous drug "either actually or constructively per HRS § 712-1251[.]"

We reject Sarmiento's arguments because the record shows that, in addition to Counts 1 and 3 following the language of the statute, the State provided information that informed Sarmiento of the nature and cause of the accusation against him in these charges, which was done before he challenged the sufficiency of the charges.  Exhibits to the felony information include an affidavit by Officer Nesbitt, who was involved with executing the search warrant and the recovery of evidence from the vehicle, and he attests to the items recovered in the vehicle search, including items containing a substance resembling crystal methamphetamine.  On July 18, 2017, prior to Sarmiento's challenge to the charge, the State presented its opening statements, asserting that among the evidence recovered from the subject vehicle were methamphetamine packets from the passenger door, that an expert witness who conducted lab testing would

---

[12]  The indictment reads, in relevant part:

> COUNT 1: On or about the 13th day of July, 2012, in the County of Kauai, State of Hawaii, CORY SARMIENTO did knowingly possess the dangerous drug methamphetamine, in any amount, thereby committing the offense of Promoting a Dangerous Drug in the Third Degree, in violation of Section 712-1243 of the Hawaii Revised Statutes.

Count 3 is identical to Count 1.

testify that two packets sent to her contained methamphetamine, and the State further argued regarding the various items recovered that it would "present to [the jury] that this evidence does prove knowingly and state of mind possession[.]"  Later that day, the State entered into evidence photos taken during the search of the vehicle, including photos of items that contained methamphetamine.  Officer Nesbitt also testified as to where these items had been found in the vehicle.  Taken together, this information provided notice to Sarmiento that the State alleged particular items containing methamphetamine found in the subject vehicle were in his possession.

Given the record and the allegations in Counts 1 and 3, the charges were sufficient.

**III. Conclusion**

Based on our determination that Sarmiento was improperly precluded from cross-examining Officer Rose regarding the <u>Sullivan</u> proceeding, the Judgment is vacated and this case is remanded for a new trial.

DATED:  Honolulu, Hawaiʻi, March 31, 2021.

| On the briefs: | /s/ Lisa M. Ginoza |
| | Chief Judge |
| Kai Lawrence, | |
| for Defendant-Appellant. | /s/ Clyde J. Wadsworth |
| | Associate Judge |
| Tracy Murakami, | |
| Deputy Prosecuting Attorney, | /s/ Karen T. Nakasone |
| for Plaintiff-Appellee. | Associate Judge |