STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. PIERCE DANIELS (AND SEVEN OTHERS), DEFENDANTS-RESPONDENTS.

Argued December 20, 1965—Decided March 7, 1966.

Mr. *John G. Graham* argued the cause for appellant, *Mr. Brendan T. Byrne,* County Prosecutor of Essex County, attorney for appellant.

Mr. *Michael Salandra* and Mr. *Myron Maurer* argued the cause for respondents, Mr. *Lawrence Friedman,* on the brief.

The opinion of the court was delivered by

HANEMAN, J. On February 4, 1964 Detective De Luca, of the State Police, submitted an affidavit to Judge Crane of the Essex County Court which disclosed the following:

"2. I have received information from anonymous informant who has proven reliable on 16 prior occasions, that a store located at *31 Avon Place Newark, New Jersey* is being used for illegal Lottery Operations by a Joseph Walters. Numerous persons enter the premises, *a small candy and ice cream store* between the hours of 3:45 P.M. and 4:30 P.M. every day allegedly for the purpose of a Lottery Operation. In the past month the Essex County Prosecutor's Office has received 3 other anonymous telephone calls relative to the same operation.

3. On January 22, 1964, Lt. Charles Dughi, and Det. Jerry Kelly and the Essex County Prosecutor's Office placed the premises of the *candy store* at *31 Avon Place* under surveillance and observed 35 persons enter and leave the store between 4:00 P.M. and 4:20 P.M. These persons remained in said store for approximately 2 to 3 minutes and left without any visible evidence of a purchase being made.

4. On January 24, 1964 Det. Richard Roberts of the Essex County Prosecutor's Office placed the *candy store* at *31 Avon Place* under observation between the hours of 3:50 P.M. and 4:30 P.M. and he observed numerous vehicles parked and double parked and the operators enter the store and leave minutes later without visible purchases.

5. On January 29, 1964 Det. Richard Roberts again placed *31 Avon Place* under observation between 3:55 P.M. and 4:35 P.M. and he observed numerous vehicles park and double park and enter the store and leave minutes later without purchases. He also observed pedestrians walk in and out of the store without making purchases.

6. On January 30, 1964 Det. Richard Roberts made the same observations as on January 29, 1964, Paragraph No. 5.

7. On January 31, 1964 Det. Richard Roberts made the same observations as on January 29, 1964, Paragraph No. 5.

9. I have been a member of the New Jersey State Police for 16 years and have investigated approximately 200 gambling complaints in various parts of the State of New Jersey and based upon my experience of the fact that the informer has proven reliable on 16 prior occasions, the fact that numerous persons frequent *the candy store at 31 Avon Place, Newark,* between 4:00 P.M. and 4:30 P.M. without making any purchase, the fact that several of these persons have gambling records. I have just and reasonable cause to suspect and believe and do suspect and believe that the following goods, and property to wit: slips, money, papers, records, memoranda, and paraphernalia used in connection with the crime of lottery are concealed in the premises of *the candy store at 31 Avon Place, City of Newark, County of Essex,* and persons found therein, and I further have just and reasonable cause to suspect and believe that said property is being used in connection with a violation of laws commonly known as lottery contrary to the Statute and in such case made and provided.

I therefore pray that a warrant be issued *for the candy store at 31 Avon Place, Newark, N. J.* and persons found therein and be searched." (Emphasis added).

Based upon said affidavit a search warrant was issued for *"a confectionery store known and designated as No. 31 Avon Place, in the City of Newark, County of Essex, New Jersey."*

Pursuant to said warrant a search was conducted at a store in a building subsequently revealed to be *35 Avon Place.* As a result of the evidence obtained from the search the Grand Jury indicted the defendants.

Defendants thereupon moved to suppress this evidence on the ground that the articles were seized as a result of an illegal search and seizure. Defendants' motion was granted. The State then moved for leave to appeal to the Appellate

Division, which motion was granted. The matter was remanded to the County Court for the taking of further testimony. After the taking thereof the County Court made findings of fact and again granted the motion. The State renewed its motion for leave to appeal to the Appellate Division, which motion was denied. This Court then granted the State's motion to appeal pursuant to R. R. 1:2-3.

The testimony taken at the hearing on the original motion and on the remand, together with the exhibits and the above affidavit disclose the following facts:

The police were advised by an unnamed informant that illegal lottery operations were being conducted at "a small candy and ice cream store at 31 Avon Place." This informant had proved reliable on 16 prior occasions. The police proceeded to the neighborhood and discovered a store on the west or odd-numbered side of Avon Place which had the outward appearances of "a small candy and ice cream store" and which they believed to be the premises described by the informant. They established an observation post in a vacant lot about a block away from which point they observed the premises through field glasses. The reason for not getting in closer proximity to the premises was explained by Lt. Dughi, a State witness. He related that the area was "active" or "hot," meaning that there was much of such activity at these premises as ordinarily accompanies the operation of a gambling establishment, and that they were fearful that the law enforcement officers would be recognized by the gamblers.

Dughi further related that the store, which was of brick construction, was located at the ground level of a three-story frame apartment house. Two plate glass windows and a door occupied almost the entire front. The interior could not be seen from the street as vision thereof was obscured by some sort of shading on the windows. No house number was visible.

Immediately below the roof line of the store was a large sign several feet in height and extending for practically the entire width thereof, bearing the legend "SODA — CANDY — FOUNTAIN SERVICE." At right angles to the store

and extending over the sidewalk was another sign with large black letters, 3 to 4 inches in height, against a white background, reading "Mell O Made." Below this line and in smaller type were the words "Ice Cream." Directly below and extending the full width of the sign appears the word "Candy" in white letters also 3 to 4 inches in height, against a black background. Hanging below the latter is another sign of smaller length and approximately the height of the "Candy" designation. The words on this pendulant sign are not legible in the photographs which were introduced at the hearing on remand. However, one of the defendants testified that at the time of the search this sign bore the words, in smaller letters, "Marie's luncheonette." Lt. Dughi testified that he had not noticed this sign.

On the same side of the street in the block in which the premises in question are located there was only one other commercial establishment, which was located in the basement of a similar apartment house. A sign projecting at right angles to that building proclaim it as a "Beauty Parlor." Laney, one of the defendants, testified that diagonally across the street from the premises raided there was a "candy and confectionery store," with a sign projecting over the sidewalk at right angles to the street with the words "Sauter's Candies—something like that." The photographs, however, disclose that this sign reads in three separate lines "SAWYER'S," "DELICATESSEN" and "SANDWICH SHOP." Although the photos were taken on June 20, 1964 there was no objection to their introduction on the ground that they did not accurately portray the street as of February 4, 1964 with the exception of foliage on the trees and the signs in the windows of the raided premises. Nor was there any testimony that the photographs were an inaccurate portrayal. The visible evidence of what appeared on the front of 26 Avon Place disproves Laney's testimony and makes it unbelievable.

It is not disputed that the store where the search was conducted was 35 Avon Place and not 31 Avon Place, the address set forth in the warrant. Lt. Dughi explained the

mistaken street number as follows: No number was visible from the observation post. In order to obtain this information he and a State Police officer cruised by the property in a car at a fairly fast pace for fear that the operators would recognize them. They failed to see any number on the store. However, they did note that the adjacent property was number 33. Having in mind the information obtained from the theretofore reliable informant that a lottery was being conducted at number 31, they presumed that the odd numbers on that side of the street ran on a diminishing scale from north to south and that the house in question was numbered 31. Subsequently it was discovered that this conclusion was wrong and that the number of the premises was 35.

The thrust of defendants' attack upon the search is that neither the affidavit nor the search warrant particularly describes the place to be raided and that the search was therefore in violation of the 4th Amendment of.the *United States Constitution.*

Defendants argue first, that the premises searched were not a confectionery store as stated in the affidavit and warrant but rather a combination grocery store and luncheonette. In substantiation they introduced evidence as to the physical features of the interior. It is unnecessary to determine which category of business was carried on in the property since the test of the sufficiency of the description of the premises is whether it is such that the officer with the search warrant can with reasonable effort ascertain and identify the place intended. *Steele v. United States,* 267 *U. S.* 498, 503, 45 *S. Ct.* 414, 69 *L. Ed.* 757, 760 (1924). The question is not what trade was actually conducted in the premises to be searched but whether the physical aspects of the exterior were sufficiently delineated in the warrant to make the intended property reasonably recognizable. The designation is adequate if the language of the warrant setting forth the external appearance produces enough information to reasonably identify the premises. Here the premises had all the outward appearances and characteristics of being a confectionery store. Un-

der the factual complex with which we are confronted, we conclude that the words "confectionery store" adequately described the property.

In any event, the proofs do not warrant the conclusion that the word does not as well adequately describe the type of business actually conducted in the *locus* in question.

But, say defendants, regardless of the mistaken designation of the premises as a confectionery store, the error in designating the street number is fatal.

■■ The prime purpose of the 4th Amendment is to assure that the people will " 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant." *Stanford v. State of Texas,* 379 *U. S.* 481, 85 *S. Ct.* 506, 510, 13 *L. Ed. 2d* 431 (1965). To that end the 4th Amendment provides, *inter alia,* that the place to be searched shall be particularly described. The test of the unreasonableness of a search cannot be stated in rigid and absolute terms. Each case is to be decided on its own facts and circumstances. *Harris v. United States,* 331 *U. S.* 145, 67 *S. Ct.* 1098, 91 *L. Ed.* 1399 (1946). *Steele v. United States,* 267 *U. S.* 498, 503, 45 *S. Ct.* 414, 416, 69 *L. Ed.* 757, 760 (1924) articulated the general test of compliance with this mandate as follows:

"It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended. *Rothlisberger v. United States* [6 cir.] 289 *F.* 72; *United States v. Borkowski* (D. C.) 268 *F.* 408, 411; *Commonwealth v. Dana,* 2 *Met.* c. (Mass.) 329, 336; *Metcalf v. Weed,* 66 *N. H.* 176, 19 *A.* 1091; *Rose v. State,* 171 *Ind.* 662, 87 *N. E.* 103, 17 *Ann. Cas.* 228; *McSherry v. Heimer,* 132 *Minn.* 260, 156 *N. W.* 130."

■ The rule has also been stated as being that the description is sufficiently clear, if it "was such as to enable the officer readily to find" the place to be searched, *Townsend v. United States,* 253 *F. 2d* 461 (5 *Cir.* 1958) or if the location can be found "with reasonable effort," *Fine v. United States,* 207 *F. 2d* 324 (6 *Cir.* 1953); *United States v. Klaia,* 127

*F. 2d* 529 (2 *Cir.* 1942), or if it provides "reasonable certainty of identification," *United States v. Falcone,* 109 *F. 2d* 579, 582 (2 *Cir.* 1940) affirmed without discussion of this point, 311 *U. S.* 205, 61 *S. Ct.* 204, 85 *L. Ed.* 128 (1940). The description of the premises requires no more than "practical accuracy." *United States v. Santore,* 290 *F. 2d* 51 (2 *Cir.* 1960), *cert.* denied 365 *U. S.* 834, 81 *S. Ct.* 745, 5 *L. Ed. 2d* 743 (1961); *Bryant v. United States,* 252 *F. 2d* 746 (5 *Cir.* 1958).

In *State v. Romeo,* 43 *N. J.* 188 (1964) this Court said at *p.* 206:

"The fundamental requirement of the Fourth Amendment is reasonableness. Granting requisite adherence to the basic essentials of that concept assuring proper recognition of the individual liberties sought to be safeguarded thereby, the validity of law enforcement conduct should not be judicially tested by *post facto* technicalities and formalisms of no vital importance. *Cf. R. R.* 3 :2A–6(b)."

See also *United States v. Ventresca,* 380 *U. S.* 102, 108, 85 *S. Ct.* 741, 746, 13 *L. Ed. 2d* 684 (1965); *State v. Boyd,* 44 *N. J.* 390, 393 (1965).

 The test is not whether the description is completely accurate in every detail but rather whether it furnishes a sufficient basis for identification of the property so that it is recognizable from other adjoining and neighboring properties. *United States v. Pisano,* 191 *F. Supp.* 861 (*S. D. N. Y.* 1961).

We must therefore analyze the facts in the matter *sub judice* to ascertain whether the search warrant complied with the basic tenet set forth in *Steele, supra.* This subject must be approached on a common sense basis rather than upon a super technical basis requiring elaborate specificity.

 Here there is no dispute that probable cause for the issuance of the warrant was established. There is not even an intimation that the officer who applied for the warrant was playing fast and loose with the court or desired to obtain a general warrant under the guise of a specific warrant. The

police were not guilty of any subterfuge. The police obeyed the mandate which required them to apply to a judicial officer whose independent judgment stands between the police and the public. *State v. Macri*, 39 *N. J.* 250 (1963). Quite patently the judge as well as the applicant for the warrant believed that the premises against which probable cause was proved and for which the search warrant was sought, was known as 31 Avon Place. The unintentional error in the designation of the street number was rationally explained.

It must be remembered that here the warrant also referred to the premises as a "confectionery store." The admitted error was the street number. No believable showing was made that there was any other building in the block which could be categorized as a confectionery store and was likely to be confused with the intended premises. See *United States v. Joseph*, 174 *F. Supp.* 539, 544 (*E. D. Pa.* 1959). It should be pointed out in passing that the photograph which showed the designation of 26 Avon Place as a delicatessen and sandwich shop rather than as a confectionery store, was apparently not called to the trial court's attention by any counsel nor was it so called to our attention. The designation of the street number might well here be regarded as superfluous. See *United States v. Contee*, 170 *F. Supp.* 26 (*D. C.* 1959). An officer could not only have, with reasonable effort, identified the premises commanded to be searched, but would not with this warrant have been justified in searching any other premises in the block. Further, four out of the seven officers who conducted the raid had been engaged in the surveillance and therefore knew the specific property for which the warrant was issued. See *United States v. Pisano*, 191 *F. Supp.* 861, *supra*. We do not mean to be understood to say generally that the personal knowledge of the officer executing the warrant, of the place intended to be searched, could cure a vitally deficient description, but merely, where as here, the error is at the worst innocent and technical, and there is additional descriptive language which properly identifies the place, such knowledge is an element to be considered. The

building to be searched was identified by far more significant language than the street number. In the light of the foregoing, the error fades into comparative insignificance.

Reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For affirmance*—None.