NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3395-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

CARLENE HARRIS and
NORMAN A. THOMAS 4TH,

    Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

March 5, 2026

APPELLATE DIVISION

Argued January 22, 2026 – Decided March 5, 2026

Before Judges Currier, Berdote Byrne, and Jablonski.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 24-08-1460.

William Kyle Meighan, Supervising Assistant Prosecutor, argued the cause for appellant (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel and on the briefs).

Francis R. Hodgson III argued the cause for respondent Carlene Harris.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for respondent Norman A. Thomas 4th (Jennifer N. Sellitti, Public Defender,

attorney; Zachary G. Markarian, of counsel and on the brief).

The opinion of the court was delivered by

BERDOTE BYRNE, J.A.D.

On leave granted, we are asked to determine whether three allegedly incorrect dates contained in a certification in lieu of oath, submitted pursuant to Rule 1:4-4(b) that rendered the subsequently issued search warrants stale, should have been corrected by the motion court as typographical errors to defeat a motion to suppress evidence, or whether an evidentiary hearing should have taken place to determine whether the dates in the certification were erroneous. The State argues it should be allowed to introduce evidence not presented to the issuing judge to prove the controlled drug buys relied upon in the certification took place in 2023, not 2022. It also contends the errors were so obvious the issuing judge may have assumed the events in fact took place in 2023 and found probable cause to issue the warrants.

We reject both arguments and affirm the suppression of the evidence. We conclude the issuing judge had no basis to issue the warrants because nothing contained within the four corners of the certification indicated the dates were typographical errors. On its face, the certification did not demonstrate probable cause to search because it was based on stale information. Also, only information presented to the issuing judge may be

2

considered by a reviewing court. The State is barred from introducing extrinsic evidence beyond the four corners of the warrant application.

## I.

We recite the facts as stated in the certification submitted to the issuing judge on March 7, 2023. Patrolman Alexander Guzman Jr. and Detective Austin Letts of the Lakewood Police Department Street Crimes Unit met with a confidential informant (CI) "[d]uring the week of January 29, <u>2022</u>" (emphasis added). The CI informed the officers defendant Norman A. Thomas 4th "is currently engaged in the distribution of crack cocaine/cocaine in the Lakewood, New Jersey area." "During the week of February 19, <u>2022</u>," (emphasis added) Detective Letts met with the CI to plan a controlled buy. The CI called Thomas and the two agreed to meet at a location in Lakewood. The CI was provided with "previously recorded Lakewood Police Department confidential funds" to buy the drugs. At the same time, Guzman and Detective Sergeant Nathan Reyes began surveilling Thomas's address at 144 John Street. They observed Thomas drive into the parking lot in a black Hyundai Sonata and subsequently enter Apartments 205 and 207. Thomas was then observed driving to the meeting place and "engag[ing] in a brief hand to hand exchange [with the CI] indicative of a [controlled dangerous substance (CDS)]

transaction."  The CI then reunited with the officers and handed Detective Letts "a quantity of suspect crack cocaine."

"During the week of February 26, 2022," (emphasis added) Detective Letts met with the CI, who arranged another controlled buy.  The CI again agreed to meet Thomas at a location in Lakewood.  Before the meeting, Reyes and Guzman surveilled Thomas's address at 144 John Street and observed him conduct "numerous hand to hand transaction[s] with multiple individuals within the parking lot."  They again observed him entering and exiting Apartments 205 and 207 before driving to the meeting location, where Thomas and the CI were observed "engag[ing] in a brief hand to hand exchange indicative of a CDS transaction."  Additionally, after the buy, Thomas "was observed exiting the area of the meet [l]ocation and once again conduct[ing] another hand to hand transaction shortly after, indicative of a CDS transaction."  After arriving at the debriefing location, the CI again handed Detective Letts "a quantity of suspect cocaine."

Guzman ran a motor vehicle records search, which indicated Thomas resided at 144 John Street, Apartment 207, in Lakewood.  He also conducted a computerized criminal history check, which revealed Thomas was the subject of nine arrests and five indictable convictions, including theft, burglary, and various drug charges.

A-3395-24

Based upon these facts, Guzman requested warrants to search 144 John Street, Apartments 205 and 207, as well as Thomas's person and his Hyundai Sonata.[1] Guzman signed one certification in support of all of the warrants on March 2, 2023. An Assistant Prosecutor reviewed that certification on March 7 at 4:45 p.m. A Superior Court judge issued the warrant to search Apartment 205 later that day at 6:49 p.m. Officers executed that warrant on March 9, 2023, and found fourteen bricks of heroin, rock and powder cocaine, firearms, and ammunition. The searches of Apartment 207 and Thomas's person yielded nothing of evidentiary significance, but officers did find oxycodone in the Hyundai Sonata.

On August 29, 2024, an Ocean County Grand Jury returned a twelve-count indictment against defendants Thomas and Carlene Harris. They were both charged with third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count one); second-degree possession with intent to distribute a CDS, N.J.S.A. 2C:35-5(a)(1), (b)(2) (count two); third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count three); third-degree possession with intent to distribute a CDS, N.J.S.A. 2C:35-5(a)(1), (b)(5) (count four); second-degree possession of a firearm while engaged in certain drug activity, N.J.S.A. 2C:39-

---

[1] Separate warrants were issued for Apartment 207, the Hyundai, and Thomas's person. Only the warrant to search Apartment 205 was provided in the record on appeal.

4.1(a) (counts six through eight); and fourth-degree possession of a large-capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count nine). Thomas was charged with third-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(1) (count five) and second-degree possession of a firearm by a convicted person, N.J.S.A. 2C:39-7(b)(1) (counts ten through twelve).

In its narrative of events as set forth above, the certification accompanying the warrant application used the wrong year three times. The initial contact with the informant and the two controlled buys (which, according to the State, occurred in January and February 2023) were listed in the certification as having taken place in January and February 2022. Defendants filed a motion to suppress.

In opposition to defendants' motion to suppress, grounded in the argument that the information in the certification was stale, the State contended, because of a typographical error, the 2022 events described in the certification in fact occurred a year later than the dates listed. They argued the initial meeting with the CI took place during the week of January 29, 2023, (not January 29, 2022) and the two controlled buys took place during the weeks of February 19, 2023, and February 26, 2023 (not February 19 and 26, 2022).

Defendants argued the underlying facts presented in the certification (the CI's initial tip and the two controlled buys) took place over a year before the warrants were issued in March 2023. Thus, defendants asserted the certification's facts were stale and insufficient to support probable cause.

The court agreed and suppressed "[a]ll evidence obtained from the search of 144 John St. apartments 205, 207 Lakewood, NJ 08701, the person of Thomas, . . . the black Hyundai Sonata[,]" and the "cellular telephone seized during defendant Thomas' arrest."

In its motion for reconsideration, the State submitted police reports showing the officers' dealings with the CI occurred in 2023. The State argued it was entitled to an evidentiary hearing pursuant to Rule 3:5-7(c) to prove the dates in the certification were incorrect. The court declined to consider evidence not presented to the issuing judge and again limited its review to the four corners of the certification. The court denied the motion, holding the warrants were unsupported by probable cause because they were based on stale information.

The State then moved for leave to appeal the denial of its reconsideration motion pursuant to Rule 2:2-4. We granted the motion. On appeal, the State raises the following contentions:

> POINT I: THE REVIEWING JUDGE FAILED TO ADHERE TO THE PROPER SUBSTANTIAL BASIS STANDARD OF

REVIEW BY CONDUCTING A DE NOVO REVIEW OF PROBABLE CAUSE

POINT II: ONCE THE JUDGE FOUND THE ERROR TO BE A "TYPO" HIS VIEW THAT IT FATALLY TAINTED PROBABLE CAUSE IN THIS CASE WAS IN AND OF ITSELF ERROR AND ADDITIONALLY HIS FAILURE TO CONDUCT A HEARING WAS ALSO ERROR

POINT III: EVIDENCE CONTAINED WITHIN THE FOUR CORNERS OF THIS WARRANT DEFEATS STALENESS

A. IT IS NOT POSSIBLE THAT PROBABLE CAUSE WAS DEVELOPED DURING THE WEEK OF JANUARY 29, 2022, FEBRUARY 19, 2022, AND FEBRUARY 26, 2022, RATHER, PROBABLE CAUSE IS CONFINED TO THOSE SAME DATES IN 2023 FROM THE FOUR CORNERS OF THE WARRANT

B. A COMMON SENSE READING OF THE AFFIDAVIT "FAIRLY INDICATES" THAT THE 2022 REFERENCE WAS INTENDED AS 2023

1. USE OF THE PRESENT TENSE REFERS TO THE THEN CURRENT YEAR

2. USE OF "THE WEEK OF" LANGUAGE IN THE CERTIFICATION REFERS TO THE THEN CURRENT YEAR

3. THE RIGHT TO ARREST DEFENDANT AFTER WITNESSING MULTIPLE DRUG DEALS INVOKES THE THEN CURRENT YEAR AND NOT THE YEAR BEFORE

POINT IV: AUTHORITY FROM OTHER JURISDICTIONS SUPPORTS THE VITALITY OF THE WARRANT HERE

II.

Our "standard of review on a motion to suppress is deferential." State v. Amang, 481 N.J. Super. 355, 374 (App. Div. 2025) (quoting State v. Nyema, 249 N.J. 509, 526 (2022)). Generally, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Although factual findings are reviewed deferentially, the trial court's interpretation of the law and "the consequences that flow from established facts" are subject to our de novo review. See State v. Hubbard, 222 N.J. 249, 263 (2015).

We begin our analysis by acknowledging well-established legal principles. The Fourth Amendment to the United States Constitution and Article One, Paragraph 7 of the New Jersey Constitution secure the right to be free from "unreasonable searches and seizures," which means that "[b]efore conducting a search, the police must obtain a warrant from a neutral judicial officer 'unless the search falls within a recognized exception to the warrant requirement.'" State v. Cohen, 254 N.J. 308, 319 (2023) (quoting State v. Camey, 239 N.J. 282, 298 (2019)).

Probable cause is a prerequisite for the issuance of a valid warrant. U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); N.J. Const. art. I, ¶ 7 ("[N]o warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.").

In determining probable cause, the judge who issues a warrant "make[s] a practical, common-sense determination whether, given all of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Moore, 181 N.J. 40, 46 (2004) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Probable cause to search cannot be based on stale information. See State v. Blaurock, 143 N.J. Super. 476, 479 (App. Div. 1976) (per curiam) ("[P]robable cause to justify the issuance of a search warrant must exist at the time the warrant is issued."); Sgro v. United States, 287 U.S. 206, 210 (1932) ("[T]he proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."). Whether the information has grown stale depends largely on the nature of the criminal activity. See Blaurock, 143 N.J. Super. at 479 ("[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature . . . the

passage of time becomes less significant." (quoting United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972))).

We are mindful, in determining the validity of the warrants, we may only consider the facts presented to the issuing judge. Our review is limited to the four corners of Guzman's certification, including the listed dates. See State v. Chippero, 201 N.J. 14, 26 (2009) ("In respect of that crucial probable cause determination, it is well settled that the issuing magistrate is required to make the determination based on only that information which is 'contained within the four corners of the supporting affidavit' or sworn testimony provided by law enforcement personnel." (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000))). Any sworn testimony by an officer not contained in the affidavit or certification in lieu of oath must be "recorded contemporaneously" with the warrant application. State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Schneider, 163 N.J. at 363). There is no such contemporaneous record in this case other than the certification. [2]

---

[2] We note the application was submitted electronically. Our court rules permit law enforcement to electronically submit a "certification in lieu of oath completed by the applicant in accordance with R[ule] 1:4-4(b)." See R. 3:5-3(a). Regardless of whether an officer submits a certification electronically or personally appears, the obligation of the judge to carefully review the application remains unchanged.

This mandate is consistent with federal law.  See Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565 n.8 (1971) ("Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate.  A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless." (citation omitted)); 2 Wayne R. LaFave, Search & Seizure § 4.3(a) (6th ed. 2020) ("[E]ven in the face of absolutely unassailable proof that the necessary facts were actually known by the affiant before the warrant issued, . . . [allowing consideration of evidence not presented to the issuing judge] cannot be squared with the Fourth Amendment, for it requires more than that a valid warrant could have been obtained.").

The State characterizes the discrepancy in dates as mere typographical errors and asserted at oral argument that "everyone knew the correct date." However, the State provides no binding precedent, nor has our research revealed any, supporting the State's contention that it is entitled to have the motion court correct what it claims are typographical errors.  The State's reliance on State v. Daniels, 46 N.J. 428 (1966), is misplaced.  There, the affiant applied for a warrant to search a candy store and used the wrong address, which was then reflected in the warrant (31 Avon Place, instead of 35

Avon Place). Id. at 431-32, 434. The mistaken address was deemed superfluous by the Court. Id. at 438-39. In addition to referring to the address, the affidavit specifically identified the store as a "small candy and ice cream store." Id. at 431. Likewise, the warrant referred to the store as a "confectionary store." Id. at 432. The Court upheld the warrant, noting there was "[n]o believable showing . . . that there was any other building in the block which could be categorized as a confectionery store and was likely to be confused with the intended premises." Id. at 438.

In contrast, the purported typographical errors in this case were neither evident nor superfluous. The dates of the controlled buys were critical to the probable cause determination. See State v. Novembrino, 105 N.J. 95, 124 (1987) (invalidating warrant that used only the present tense to refer to drug sales, with no reference to specific dates). If the certification is read literally, the two controlled buys occurred in February 2022, and there was no probable cause to issue the search warrants in March 2023. The State concedes the warrants lacked probable cause if the 2022 dates were correct. However, it argues the issuing judge could permissibly have inferred that "2023" should be read in place of "2022."

There is no basis for such an inference. The certification used the wrong dates consistently—three times over three pages. Guzman did not once use the

correct year as he described the narrative of events, consisting of the initial meeting with the CI and the two subsequent controlled buys. A cursory review of the certification shows it was facially deficient with respect to probable cause because it was based on stale information. Nothing in the four corners of the certification suggests (1) "2022" is a typographical error, and (2) "2023" should be substituted in its place. Nevertheless, the State contends several "contradictions" in the certification make it clear to the reader that the dates were typographical errors.

First, the State contends Guzman could not have participated in the investigation if it had occurred in 2022 because, at that time, he was assigned to the Ocean County Narcotics Strike Force. According to the certification, Guzman began employment with the Lakewood Police Department in 2019, was assigned to the Narcotics Strike Force in January 2022, and was re-assigned to the Lakewood Police Department in January 2023. However, as the trial court noted, there is no reason Guzman could not have participated in this investigation while a member of the Strike Force in 2022. The State also argues that since Guzman acted in an "undercover capacity" while with the Strike Force, he could not have participated in the investigation. But the certification mentions he worked as "a case agent, as well as in an undercover capacity." Guzman could plausibly have worked on the controlled buys as a

14

case agent rather than undercover. Moreover, it was not the issuing judge's responsibility to ascertain where Guzman worked at what time and in what capacity.

Second, the State argues the use of the present tense when describing the alleged drug activity—for example, the phrase "currently engaged in the distribution of crack/cocaine"—means the drug activity must have occurred close in time to March 2, 2023, when Guzman signed the certification. This contention is meritless and contrary to the rule announced nearly forty years ago in Novembrino regarding the insufficiency of the present tense in a warrant affidavit. See 105 N.J. at 124.

Third, according to the State, the use of the number "23-02" when referring to the CI obviously indicates the events involving the CI must have occurred in 2023. We disagree. Other systems, including our own court system, use fiscal years instead of calendar years. A file denoted as "23" does not readily advise the reader it was first generated in 2023. And, as the motion court aptly noted, it is unlikely the issuing judge "understands the numbering system assigned to Lakewood Police Department confidential informants."

Fourth, the State points to the use of the words "during the week of" each time a 2022 date was mentioned. January 29, 2022, February 19, 2022, and February 26, 2022, were all Saturdays. But in 2023 the same days of the

15

month were Sundays. Because a week starts on a Sunday, the State contends it would have been illogical to use the phrase "during the week of" if the drafter intended to refer to the 2022 dates, which were all Saturdays. We find it entirely implausible to assume an issuing judge would compare a certification against a calendar, note this subtlety, and infer 2023 was the intended year.

Finally, the State argues law enforcement would not have waited over one year to submit a warrant application, which justifies an inference the controlled buys were conducted in 2023 instead of 2022. Again, it is the affiant's duty to provide correct information, not the issuing judge's task to determine or infer whether it is accurate.

The State's emphasis on subtle ambiguities in the certification ignores the fact that the issuing judge's role is to "make a practical and realistic evaluation of the information presented on the issue of probable cause," Chippero, 201 N.J. at 32, and not speculate that the certification's language meant something other than what was expressed on the page. If there were doubts regarding the dates in the certification, the issuing judge was free to seek clarification from the officer or deny the application.

In this case, a practical and commonsense reading of the certification indicates the buys occurred in 2022. There was no probable cause in March 2023 based on the observation of two controlled buys in February 2022. See

16                                                                                    A-3395-24

State v. Sager, 169 N.J. Super. 38, 45 (Law Div. 1979) (noting affidavit describing heroin sale and pattern of visits to an apartment by "known narcotics users" would have been insufficient to establish probable cause nine weeks later because in the interim "[t]he premises could have been discontinued as a location for the distribution of drugs" or "the persons who occupied the premises could have vacated the apartment"). Therefore, because the facts in the certification were stale, the issuing judge had no basis to conclude there was probable cause.

Additionally, it is not the trial court's role—or our role—to rewrite a poorly prepared affidavit. See Novembrino, 105 N.J. at 129 ("Our observations as to the officer's experience, the time spent in preparing the affidavit, and the absence of any review reflect our conviction that an affidavit in support of a search warrant must be carefully prepared and reviewed . . . ." (emphasis added)). The certification was drafted by an officer and reviewed by an assistant prosecutor, yet neither noticed the alleged incorrect dates (appearing three times over three pages) that eliminated the basis for probable cause. Precision is essential in any ex parte application where a person's constitutionally protected privacy interests are at stake. To overlook their negligence in preparing and reviewing the certification would "inevitably and inexorably diminish the quality of evidence presented in search-warrant

applications." Id. at 153; see also State v. Smith, 212 N.J. 365, 388 (2012) (noting evidence obtained in violation of the warrant requirement "is excluded so as not to reward misconduct and to provide an incentive for adherence to constitutional mandates").

To be sure, we acknowledge that warrant affidavits are usually prepared "in the midst and haste of a criminal investigation," which means reviewing courts "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." United States v. Ventresca, 380 U.S. 102, 108-09 (1965). For this reason, when a typographical error is immediately apparent as such, and when the drafter's intended meaning is obvious, the error should not invalidate the warrant. See Black's Law Dictionary 683 (11th ed. 2019) (defining "clerical error" as "an error resulting from a minor mistake . . . esp[ecially], a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading" (emphasis added)). For example, if a certification filed today had the year as "2926," a commonsense reading would permit the reviewing court to conclude the drafter meant "2026" instead of "2926."

However, haste does not trump accuracy and compliance with Fourth Amendment principles. As our Supreme Court has stated, "New Jersey does not recognize an officer's good faith alone as an exception to the warrant

requirement." State v. Boone, 232 N.J. 417, 430-31 (2017). New Jersey courts "have maintained that strict adherence to the protective rules governing search warrants is an integral part of the constitutional armory safeguarding citizens from unreasonable searches and seizures." Marshall, 199 N.J. at 617 (quoting State v. Valencia, 93 N.J. 126, 134 (1983)); State v. Macri, 39 N.J. 250, 265 (1963) ("Eyes may not be closed to the infringement of a constitutional right because the officer was well-meaning or the transgression is deemed slight; and erosions must at all times be carefully guarded against lest they lead to the destruction of the right itself.").

Furthermore, we reject the State's argument that it is entitled to a Rule 3:5-7(c) hearing to introduce evidence not presented to the issuing judge to prove that Guzman wrote the wrong dates. Fourth Amendment principles require an issuing judge to consider probable cause solely on the information presented to the court in the accompanying affidavit. Here, the submitted information was stale. The trial court properly suppressed the evidence seized pursuant to the wrongly issued warrants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19